ELLSWORTH WOOLEN MANUFACTURING COMPANY,

*vs.*

WILLIAM FAUNCE and others.

Hancock.    Opinion June 10, 1887.

*Corporations. Meetings. Quorum. Capital stock. Directors. Officers de facto.*

The by-laws of the plaintiff corporation provided that "the capital stock of the company shall be $10,000, divided into 400 shares of $25 each;" and that "no business shall be transacted at any meeting of the stockholders unless a majority of the stock is represented, except to organize the meeting and adjourn to some future time."

*Held,* That it would take 201 shares to constitute a majority of the stock.

*Held,* also, That no meeting at which a less number than 201 shares were represented would be legal for the transaction of business.

A board of directors claiming an election at such meeting cannot, as against another board holding over from a previous election about which no question is raised, be regarded as officers *de facto*. That doctrine is not applicable where other individuals, as the defendants in this suit, are claiming to hold the title to the offices and the right to act in that capacity, and to have been legally elected to such office.

In what cases a court of equity, upon proper proceedings, will grant relief against the fraudulent acts of the directors of a corporation.

ON report on agreed statement.

The opinion states the case.

*Wiswell and King,* for plaintiff.

"Capital stock" is defined as follows in the books. Rapalje & Lawrence's Law Dict. gives it in this way : "Capital stock, The aggregate sum represented by the shares of stock in a company or corporation ; the amount subscribed to the stock by the promoters and members, upon which assessments or calls may be made and dividends paid ; the corporate fund as distinguished from other property of the corporation." Bouvier's Law Dict.

defines it in this way: "Capital stock, The sum divided into shares, which is raised by mutual subscription of the members of the corporation."

In Boone on the Law of Corporations it is said page 105 : "In reference to a corporation the word capital for most purposes signifies the aggregate of the sums subscribed and paid in, or secured to be paid in by the shareholders." "The term stock when not employed to denote the same thing as capital has reference to the interests of the shareholders or individuals. Field on Corporations, § 123, says, in defining stock, "It is the money or capital invested in the business," &c.

The R. S., c. 48, § 17, in giving the powers of persons who associate themselves together, provides, among other things, that they may "fix the amount of the capital stock," this does not mean that they may create it but fix the amount of the limits just as was done in this case.

The power of a corporation to make by-laws is always subject to the restriction that such by-laws must be reasonable and not oppressive, vexatious or unequal. Boone on Corporations, § 58.

Under the circumstances of this case the directors are certainly officers *de facto* under the rule laid down in the books, and the rule holds good as to officers of a corporation as much as to public officers. *Hooper* v. *Goodwin*, 48 Maine, 80; Boone on Corporations, § 135 and cases cited; *Bliss* v. *Day*, 68 Maine, 201; *Simpson* v. *Garland*, 76 Maine, 203.

*Wilson and Woodard*, for the defendants cited : R. S., c. 46, § 6; *Dodge* v. *Woolsey*, 18 How. 331; *Hersey* v. *Veazie*, 24 Maine, 9; *Hawes* v. *Oakland*, 104 U. S. 450; *Brown* v. *Lunt*, 37 Maine, 423; *Woodside* v. *Wagg*, 71 Maine, 207.

FOSTER, J. Bill in equity for the redemption of a mortgage given by the plaintiff corporation upon its real estate to one Lewis Friend, and by him assigned to the defendants, who were at the date of the assignment, and still claim to be, a majority of the board of directors of said corporation. Fourteen days after the assignment, the defendants commenced foreclosure proceedings by publication, the mortgage containing the ordinary one

year foreclosure clause. Before the time for redemption had expired, an annual meeting of the company was held, and, as it is claimed, a new board of directors was elected. The defendants being in possession an account under the statute was demanded, which the defendants refused to render on the ground that no authority existed in the board, or either of its members, to demand an account.

Whereupon, four days before the expiration of the year for redemption, this suit was brought.

On the first day of the return term, the defendants duly filed a motion to dismiss the bill for want of authority to commence or prosecute the same. The motion being seasonably filed brings the question properly before the court. *B. O. & M. R. R. Co.* v. *Smith*, 47 Maine, 44. The president of a manufacturing corporation, as such, has no authority to commence an action in the name of the corporation. *Ashuelot M'f'g Co.* v. *Marsh*, 1 Cush. 507 ; *Mahone* v. *R. R. Co.* 111 Mass. 75, and cases cited.

Here are two sets of officers, each claiming to be the legal board of directors — the defendants, as the board elected at a prior annual meeting of the company and as such with authority by its by-laws to hold their office for one year or until their successors should be chosen ; the other board, as that elected at the subsequent annual meeting in 1885.

The question presented for our consideration then, is whether the board of directors claiming an election at the annual meeting in 1885, and commencing this suit, was legally authorized to act so far as this proceeding is concerned.

The answer to this depends upon the validity of their election.

It is admitted that the company was legally organized, and its by-laws duly adopted. The second by-law provides that "the capital stock of the company shall be $10,000, divided into 400 shares of $25 each ;" and by the thirteenth by-law, "no business shall be transacted at any meeting of the stockholders unless a a majority of the stock is represented, except to organize the meeting and adjourn to some future time."

At the organization of the company 243 out of the 400 shares of the capital stock were subscribed for, and this number has

remained substantially without change during the time involved in this case,— no more than that number ever having been subscribed for.

What should constitute a quorum for the transaction of business at their meetings, was a question which the stockholders had a right to determine, (R. S., c. 46, § 6,) and this they did by the adoption of the foregoing by-law providing that unless a majority of the stock was represented, no business should be transacted at any meeting, except to organize and adjourn to some future time.

At the annual meeting of June 8, 1885, at which it is claimed the new board was elected, 138 shares of the capital stock were represented and no more. Was there a majority of the stock represented at that meeting? If not, there could be no legal election of officers at that meeting.

We think a fair and reasonable as well as proper construction of the by-laws leaves no room for doubt as to what was intended by a "majority" of the stock. It was divided into 400 shares, and it would take 201 shares to constitute a majority of that stock. The language of the by-law is plain and susceptible of no ambiguity. If we turn from the language of the by-law to the action of the stockholders themselves who were the authors of it we shall find that such seems to have been their understanding from the time when the company was first organized, and the by-laws adopted.

The first annual meeting was held June 12, 1881, at which meeting only 133 shares were represented. And the question being raised at that time whether the meeting was one at which business could be legally transacted, the record shows that another meeting was called. At that meeting a majority of all the stock was represented, and the stockholders proceeded to the transaction of business. Moreover, in the call for that meeting, was the following: "2d. To see if the corporation will amend by-law thirteen by adding the word 'subscribed' after the word 'stock' in the second line." The records do not show that any action was taken in reference to that article in the call. The question being thus brought squarely before the stockholders at a

meeting in which a majority of the whole stock was represented, they chose to take no action upon it, and left the by-law as it was.

Furthermore, the report shows that annual meetings were regularly called each year thereafter, but at every meeting less than 201 shares of the capital stock were represented — and at every meeting until that of June 8, 1885, no business was done except to adjourn. At that meeting, however, a resolution was adopted and recorded, declaring 138 shares to be represented, and that the same constituted a legal quorum for the transaction of business.

But inasmuch as there was not, in fact, a majority of stock represented at that meeting, there could be no legal business transacted, except to organize and adjourn to some future time. Such was the language as well as the evident intent and meaning of the by-law, duly adopted for the government of the corporation. Consequently it was not in the power of a minority to do that which only a majority could legally accomplish. Hence, it cannot be held that the board which now represents this plaintiff corporation, and which claims the right to commence and prosecute this action, was legally elected.

The consequence is that the old board of directors, about whose election no question is raised, continued in office by virtue of the by-laws of the company, and were the only legal board of directors at the time this suit was commenced.

Nor do we think that the other position of the plaintiff can be sustained — that the new board of directors were officers *de facto*, if not *de jure*, and thereby authorized to commence and maintain this suit for redemption. Here were two boards of directors claiming title to the same offices. Were there no other persons claiming to hold these offices and to have been legally elected to them, then it might be that, acting under color of an election, the acts of such new board might be valid as to the public or third persons affected thereby or interested therein. But we do not understand that the principle applies in a case like the present where other individuals — the defendants themselves — are claiming to hold the offices and the right to act in that capacity, and to have been legally elected to such offices. *Charitable Association* v.

*Baldwin*, 1 Met. 359; *Cooper* v. *Curtis*, 30 Maine, 488; Ang. & Am. Corp. § 286; *Woodside* v. *Wagg*, 71 Maine, 210.

The case comes before this court on report. From the stipulations therein contained we are only to determine whether, from the facts as stated, the bill can be maintained. If it cannot, then it is agreed that it is to be dismissed. The plaintiff corporation, acting through a board of directors, elected not in accordance with the by-laws of the corporation, and consequently, as against the defendants, having no authority to act, seek to maintain this bill as a bill for the redemption of a mortgage held by the defendants. There is no allegation of fraud, nor is there sufficient to warrant the court in assuming that the defendants are acting in violation of their trust. The court will not assume that there was fraud when none is alleged. It does not appear that the defendants have refused or neglected to do and act for the interest of the corporation, or that they have not, in doing what they have, acted according to their best judgment for the corporation. Whenever the contrary may appear, and it can be shown that the defendants have been acting in violation of their trust, or have combined to injure the property of the corporation, or have fraudulently misappropriated the corporate property for their own benefit or for the benefit of third persons, or have obtained undue advantage, benefit, or profit for themselves by purchase, sale or other dealings with the same, then undoubtedly, upon proper proceedings, this court as a court of equity has power to grant relief, and the rights of the corporation, when violated, may be enforced by equitable remedies. Pom. Eq. § 1094. But in this suit, which is in its nature a statutory proceeding for redemption of mortgaged premises, no authority is shown whereby the plaintiff can maintain this bill.

*Bill dismissed.*

PETERS, C. J., WALTON, DANFORTH and HASKELL, JJ., concurred.

EMERY, J., did not sit.