ADELAIDE E. BUCK *v.* TROY AQUEDUCT CO.

January Term, 1903.

Present: TYLER, MUNSON, START, WATSON, and STAFFORD, JJ.

Opinion filed November 30, 1903.

*Corporations—By-laws—Modification—Directors—Number— V. S. 3717—Corporate Action—Course of Business— Signature of Note—Informality—Husband and Wife— Action by Wife—V. S. 2644—Transfer of, Note—Evidence—Relevancy.*

Though the by-laws of a corporation provide it shall have five directors, yet, if with the consent of all the stockholders, a board of only three directors conduct the business of the corporation for a long series of years, such by-laws are changed accordingly, the charter being silent as to the number of directors, and V. S. 3717 requiring only three.

Two of its board of three directors can bind a corporation in the transaction of its ordinary business, without the consent, or even knowledge, of the third.

The borrowing money to use in repairing its property and giving the corporation's note therefor, is an act in the transaction of its ordinary business.

That one of the three directors acts in the double capacity of agent for both borrower and lender, does not invalidate such note when the corporation suffers no detriment thereby.

A note to which a director signs the corporate name only is valid, the corporation having only three stockholders, who are also its only directors, and having no other officers, and two of said directors being present when the note is signed and taking part in the transaction.

When a husband transferred to his wife, without indorsement, a note which he then owned, payable to a third person, or bearer, as collateral security for money borrowed from her by him, which he still owes and which is more than the amount of the note, she is the lawful owner of the note and may maintain an action thereon against the maker.

A husband who, without indorsement, transfers to his wife, as collateral security for a debt which he owes her, a note owned by him and payable to a third person, or bearer, does not become bound to her in any way thereby.

An offer in the alternative must be taken in the view less favorable to the offerer.

Evidence that while one held a note as agent of the payees, he misappropriated money which during that time he had received as the agent of the maker, does not tend to show payment of the note.

GENERAL ASSUMPSIT, with specification relying on a promissory note. Pleas, the general issue with notice denying the execution of said note; payment, and Statute of Limitations. Heard on the report of a referee and exceptions thereto, at the September Term, 1902, Orleans County, *Haselton,* J., presiding. Judgment for the defendant. The plaintiff excepted.

Said note was payable to "Jesse Buck estate, or bearer," and was signed "Troy Aqueduct Company," and not otherwise.

The other facts sufficiently appear in the opinion.

*Young & Young* for the plaintiff.

The defendant can not raise the question of its corporate-existence, not having denied same in its pleadings. *Boston Type Foundry* v. *Spooner*, 5 Vt. 93; *Lord* v. *Bigelow*, 8 Vt. 445; *Aetna Ins. Co.* v. *Wires*, 28 Vt. 93.

The note was so executed as to bind the defendant. *Bank of Middlebury* v. *R. Co.*, 30 Vt. 159; *Foote* v. *R. Co.*, 32 Vt. 633; *State ex. rel. Page* v. *Smith*, 48 Vt. 66; *Waite* v. *Mining Co.*, 37 Vt. 608.

The fact that the corporation took and used the money procured on this note ratified the same. *Windham Prov. Inst.* v. *Sprague*, 43 Vt. 502; *Bank* v. *Fassett*, 42 Vt. 432.

The note has a sufficiently definite payee. *Shaw* v. *Smith*, 150 Mass. 166; *Petier* v. *Babillion*, 45 Mich, 384; *McKinney* v. *Harter*, 43 Am. Dec. 96; *Cox* v. *Beltzhoover*, 47 Am. Dec. 145; *Robertson* v. *Seward*, 1 M. & G. 511, 39 Eng. C. L. 882; *U. S.* v. *White*, 37 Am. Dec. 374; *Grant* v. *Vaughn*, 3 Burr. 1516.

A note payable to A. B., or bearer, is equivalent to a note payable to bearer. 4 Am. & Eng. Enc. of Law, 134; *Eddy* v. *Bond*, 19 Me. 61; *Doyle* v. *Weeks*, 4 Mass. 451; *Truesdale* v. *Thompson*, 12 Met. 565; *Hutchins* v. *Low*, 13 N. J. L. 246.

The plaintiff is the bearer of the note and can recover thereon. *Bank* v. *Adams*, 70 Vt. 132; *Blaney* v. *Pelton*, 60 Vt. 275; *Fletcher* v. *Fletcher*, 29 Vt. 98; *Boardman* v. *Rogers*, 17 Vt. 589; *Ellis* v. *Watkins' Est.*, 73 Vt. 371.

Plaintiff had a valid equitable claim against her husband. *Ballard* v. *Goodno*, 73 Vt. 88; *Hackett* v. *Moxley*, 65 Vt. 71; *Atkins* v. *Atkins' Est.*, 69 Vt. 270; *Purdy* v. *Purdy's Est.*, 67 Vt. 50.

*Cook & Williams* for the defendant.

Neither husband nor wife can contract with the other, so the note could not be transferred by the plaintiff to her husband. 6 L. R. A. 559; 12 L. R. A. 600; V. S. 2644.

The note was not executed by defendant. The charter provided for by-laws, and the by-laws provided for five directors. There were only three directors of the defendant, and only two took part in the transaction, or even knew about it. Morawetz on Priv. Corp. (2nd Ed.) §§ 474, 475, 476, 503, 512, 517, 531, 532.

D. H. Buck could not act as the agent of both the payee and the maker of the note. Morawetz on Priv. Corp. §§ 520 and 528.

STAFFORD, J. The defendant is sued as a corporation. In the earlier stages of the case some question seems to have been made in regard to its legal existence, but that is not urged in this court, and upon the findings, the defendant is to be treated as having been organized under the statute creating it, No. 101, Acts 1861. Its by-laws provided that it should have five directors, a secretary, treasurer, collector and superintendent,—all to be elected annually. Every year from 1864 to 1881, it chose a full board, but from 1882 to 1892, it chose only three, although no change appears to have been made in the by-laws. In June 1893, the time which becomes important here, the three directors were Aiken, Buck and Hammond, who were likewise the only stockholders. Hammond owned but one share; Buck owned seven and Aiken the remaining twenty-three. No officers except directors had been chosen in many years. When such were last chosen, Buck had been collector and treasurer and Aiken secretary and superintendent, and each had continued to act in

those respective capacities, and was acting as such and as director at the time in question. Hammond took no part in the management of the business. The corporation was now in need of money to repair its aqueduct. Buck, as agent of his father's heirs, had in his hands $500 belonging to that estate, and this, he, as such agent, loaned to the corporation, writing and receiving therefor a note which Aiken signed with the corporation's name, "Troy Aqueduct Co.," only, and the money was used in making the repairs. The note is dated June 23, 1893, and runs "to Jesse Buck estate or bearer." Hammond knew nothing about it. The action is brought by a subsequent holder as bearer, and thus is based solely upon the instrument itself, and the question is whether the note is binding upon the corporation. In order to determine this point it may be necessary to consider whether Aiken, Buck and Hammond constituted a legal board of directors. In dealing with the question alluded to at the outset, whether the defendant is a legal corporation or merely a voluntary association, the referee has reported facts which may aid in the decision of the present inquiry. After finding that the defendant was legally organized, provided the evidence is held to warrant him in so doing, (and about that no question is now made), he goes on to say that, if the evidence does not justify him in finding the due organization and legal existence of the corporation, he still finds "that said stockholders have transacted all business of the Troy Aqueduct Co. since March 29, 1862, as a corporation and not as an association, and have held themselves out to the world, and are now acting and holding themselves out to the world, as such, and that, from that time down to the giving of the note in suit, said corporation has controlled and managed all property and rights of said association the same as if such

property and rights had been the property and rights of said corporation," and, in another connection,—"that the stockholders, who were all members of said association, after said meeting of March 29, 1862, held themselves out to the world and transacted business as a corporation,"—"that the present stockholders, who have succeeded to the ownership of the stock of said association, are now transacting business as a corporation and holding the Troy Aqueduct Co. out to the world as such."

Thus the findings appear to be clear and satisfactory that Aiken, Buck and Hammond, who were all the stockholders of the company and consequently the only persons eligible as directors under our statute (V. S. 3677), were carrying on the business of the corporation through a board of three directors, for if the corporation was acting at all it was acting through that board. Although Hammond himself did not act as director, yet these findings compel us to say that as a stockholder he did act through this board by consenting that the corporation should continue its business through and by means of it. The stockholders for a long series of years had been doing the same. In such circumstances it must be held that the by-law requiring a board of five was changed by the unanimous consent of the stockholders, and that the board of three was a legal board,—the act of incorporation being silent as to the number of directors and the statute, if it applies at all to corporations by special act, being satisfied with a board of that number. V. S. 3717.

That a by-law may be modified by unanimous consent of the stockholders, to a regular course of corporate action inconsistent therewith, is well settled. Thomp. Corp., sec. 945; Taylor Private Corp. (5th ed.), sec. 197; Clark & Marshall Private Corp., vol. 3, 1952, and the numerous cases cited by those authors.

Buck and Aiken, being a majority, had the power to bind the defendant in the transaction of its ordinary business without the concurrence of Hammond and even without notice to him. *Bank of Middlebury* v. *R. Co.,* 30 Vt. 169; *Foote* v. *R. Co.,* 32 Vt. 633; *Waite* v. *Mining Co.,* 37 Vt. 608; *State ex. rel. Page* v. *Smith,* 48 Vt. 266.

The borrowing of money for its use, and, in the circumstances stated, the giving of the corporation's note therefor, was an act "in the transaction of its ordinary business." Such is the well established American rule. Thomp. Corp., secs. 3988, 3989.

That Buck acted in a double capacity, as agent for borrower and lender alike, does not invalidate the note. The corporation has not been imposed upon, and has undertaken only to pay back with interest the money it has received and used in its business, which is no more than the law would have required it to do without a note. It has no offset against the Buck estate and so is put in no worse plight by being required to pay to bearer. The rule invoked was intended to protect principals from the wrong of their agents, not to enable principals to wrong others through their agents. If wrong would otherwise be presumed from the existence of the double relation, it is rebutted by the findings.

Neither do we think that there is any such informality in the signature as makes the note invalid in the circumstances of the case.

The next question is whether the plaintiff, who is the wife of Buck, can recover upon the note. Her husband became the owner of it when the estate was, without administration divided among the heirs; and being already indebted to his wife and about to borrow of her a further sum, he delivered to her this note as collateral security for the whole,

which was more than the amount of the note. She has never been paid any part of her debt and has held the note in her exclusive possession and control ever since she received it.

That the plaintiff is a married woman is no reason why she may not recover upon a contract between herself and the defendant. V. S. 2644. Presenting, as she does, a note payable to bearer, she is *prima facie* entitled to recover thereon. V. S. 2307. *Limerick Bank* v. *Adams*, 70 Vt. 132, 40 Atl. 166.

Then the only question is whether the facts above stated rebut the presumption and show that she is not the lawful holder of the note. Her husband is not a party to the note, as it reads; he has not endorsed it, nor become bound to her in any way by delivering it to her. He has simply put it in her hands as security. His debt to her is one the law recognizes and will enforce if appealed to by a bill in equity. The only difference between such a debt and one not between husband and wife is that it cannot be enforced by the ordinary action at law. How then can it be said that she is not the lawful holder? The facts instead of showing that she is not, show that she is.

One question of evidence arises. When the note was delivered to the wife it was overdue. We quote from the report:

"The defendant offered to show that Buck from the date of the note in suit to the time of its alleged transfer, collected and received moneys as collector of said corporation to the amount of more than $600; that he did not pay out said money for any purpose other than for his own private matters or to pay the note in suit; that at the time of said alleged transfer to his wife, said Buck was very short of money and wanted it for immediate use, as tending to prove that said Buck did

take of the funds of said corporation between said two dates for his own private use and that the same is and was a payment on said note between said dates.    To this offer the plaintiff objected, and the evidence was excluded subject to the defendant's exception."

The note was given June 23, 1893.    Buck held it as agent for the estate until September, 1894, when it became his and was thereafter held by him as his own until he delivered it to his wife in December, 1896.    Suppose that while holding the note as agent for the heirs he did collect and keep or pay out for his private use moneys of the defendant sufficient in amount to pay it; that does not show, nor tend to show, that the note was paid.    The offer was not limited to the time when he held the note as owner and all the money may have been received while he held it as agent.    The offer is in the alternative, to show that he either applied the money on this note or to his private use, and must be taken in the view less favorable to the one making the offer, which is that he used the money for himself and did not apply it on the note he was holding for others.    An agent, whose principal has entrusted him with a note against A, is also, as it happens, agent for A, and, as such, receives and misappropriates A's money.    Can that be said to constitute payment of the note, or even to tend to show it?    Yet that is the case made by the offer.

*Judgment reversed, and judgment for the plaintiff for the amount of the note.*