SIMPSON CLARK *v.* E. B. WILD ET AL.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 18, 1911.

*Corporations—Stockholders' Meetings—Election of Directors—Quorum—Conflict between By-Laws and Statute—Illegal Proxies—Course of Corporate Action—Effect—Notices—Quo Warranto—Issuance of the Writ—Discretion—Complaint—Burden of Proof—Presumptions.*

The provisions of the general law governing the formation thereunder of corporations by voluntary association are as binding on such a corporation as they would be if recited in a special charter, and all by-laws inconsistent therewith are void.

P. S. 4301 providing that a majority of the stock represented at a meeting of the stockholders of a corporation formed by voluntary association shall constitute a quorum, is not intended to apply only when there is no by-law providing what shall constitute a quorum, and so a by-law requiring for a quorum the representation of one-half of all the stock issued is invalid.

Though a course of corporate action may, within the limits of corporate power, modify a by-law, such action cannot affect matters governed by statute or by charter, and so, since the statute prescribes what shall constitute a quorum for a meeting of stockholders of a corporation formed under the general law, the adjourning of such meetings in recognition of a by-law requiring the representation of a greater number of shares for a quorum cannot affect the question of what is necessary for a quorum at a subsequent meeting.

Where all the shares voted at a meeting of stockholders of a corporation

formed under the general law were voted the same way, it is immaterial that some of the shares were voted under proxies not duly executed, since the statute prescribes that a majority of the stock properly represented shall constitute a quorum.

One who has introduced incompetent testimony cannot be heard to say that it should not be given the consideration to which its natural probative value entitles it.

Where the by-laws of a corporation require merely that notices of stockholders' meetings should be "mailed" a designated time before the meeting, it is immaterial that the notices are not dated.

Since P. S. 1972 requires the complainant for a *quo warranto* to set forth the facts warranting the issuance of the writ, it will be presumed that there was seasonable notice of a stockholders' meeting at which was a purported election of defendants as directors of a corporation, where the complaint does not allege the contrary, but states that notices of the meeting were mailed to every stockholder in accordance with the by-law.

The burden is on the complainant seeking a *quo warranto*, on the ground that defendants illegally hold the office of directors in a corporation, to make out a case against defendants and to prove everything relied on for that purpose.

No notice of the adjourned meeting of the stockholders of a corporation is necessary, where that is not required by any statute or the by-laws.

Where the election of directors of a corporation was legal, the adoption at a subsequent stockholders' meeting of resolutions, undertaking to create vacancies by resolving that the previous election was illegal, was ineffectual.

While it is within judicial discretion to refuse a writ of *quo warranto*, though defendants' title to the office in question is shown to be defective, there is no such discretion to issue the writ unless defendants' title is shown to be defective.

PETITION for a writ of *quo warranto* brought to the Supreme Court for Orleans County, and heard at its May Term, 1911, on the pleadings and testimony taken and filed. The opinion states the case.

*Young & Young* for the petitioner.

*W. W. Reirden* and *J. W. Redmond* for the defendants.

HASELTON, J. This is a complaint alleging that each of the defendants illegally holds the office of director of the Percival Furniture Company, a corporation, and that the complainant

and six other persons, whose names are set out, are the legal directors of the corporation. The complaint prays judgment in accordance with these allegations, and prays for the issuance of the writ of *quo warranto*.

Conformably to law the complaint sets forth the facts which it is claimed warrant the issue of the writ. P. S. 1972.

The complaint being preferred and prosecuted by a private person it is, as the law requires, verified by oath. P. S. 1973.

Among the things set forth in the complaint and admitted by the answer are the following: The corporation in question was organized under the laws of the State providing for the "formation of corporations by voluntary association." P. S. Chap. 187. It adopted certain by-laws. These provide that the annual meeting of stockholders shall be in January of each year, and that the clerk shall give notice of time and place "either personally or by mailing a written notice to each stockholder at his last known place of residence at least ten days before said meeting."

The by-laws also provide that directors, seven in number, shall be chosen at each annual stockholders' meeting and that if at any such meeting there is no quorum the directors already in office shall hold over until their successors are chosen.

The by-laws further provide that at any legally convened stockholders' meeting representation of one-half of the issued stock shall constitute a quorum for the transaction of business, but that a less representation may adjourn the meeting from time to time until there is a quorum.

At the annual meeting in January, 1910, C. F. Percival, M. A. Owen, E. F. Moody, E. L. C. Percival, E. W. Barron, Bernard M. Small, and Simpson Clark, the complainant, were elected directors of the corporation, and E. F. Moody was elected its clerk.

In January, 1911, Moody, the clerk of the corporation, in pursuance of the by-laws, issued and mailed to every stockholder a written notice that the annual meeting for the election of directors would be held at the clerk's office in South Royalton, January 31. At the time and place so appointed less than one-half of the capital stock was represented in person or by proxy. Thereupon the meeting was adjourned to March 21, 1911, at the

same place and hour of the day. At the adjourne d meeting; sixty-eight shares, and no more, were represented. There were issued and outstanding two hundred and eighty-five shares: of the capital stock. Only two stockholders, E. F. Moody and C. C. Baldwin, were present in person.

C. C. Baldwin, owned three and one half shares of stock and held proxies for sixty-one and a half shares and cast his sixty-five votes for the defendants and one G. C. Baldwin as directors. No other votes were cast.

The validity of this election is the chief question to be determined; and it will first be considered upon the assumption that the allegations and admissions with reference to it, as above recited, are true, and without reference to the evidence, which it is claimed has a modifying effect.

If the by-law declaring what shall constitute a quorum for the transaction of buisness is valid then the defendants. were never legally chosen as directors for they were chosen, if at all, at a meeting at which a majority of the capital stock was not represented. But the by-law is not valid for it is in conflict with the statute applicable to corporations formed by voluntary association, which provides that a majority of the stock represented at a meeting of the stockholders shall be a. quorum. P. S. 4301.

It is argued that the statutory provision just referred to is intended to govern only when there is no by-law that provides what shall constitute a quorum. But to apply such a principle of construction to the statutory provisions providing for the formation of corporations by voluntary association, would, to the extent of its application defeat the wise and manifest purpose of the statute.

The provisions of the general law with regard to corporations organized by virtue thereof are as binding upon it as they would be if written into a special charter; and all by-laws which are inconsistent with the charter of a corporation or with the governing law are void. The principle is fundamental, but a few cases are cited below which illustrate the strictness with which it is applied. *Rex* v. *Bumstead,* 2 B. & Ad. 699; *Rex* v. *Tappendan,* 3 East, 187; *Brewster* v. *Hartly,* 37 Cal. 15, 99 Am. Dec. 237, 240; *Presbyterian Assurance Fund* v. *Allen,* 106

Ind. 593, 7 N. E. 317; *Supreme Council A. L. of H.* v. *Perry,* 140 Mass. 580, 5 N. E. 634; *Bergman* v. *St. Paul etc. Ass'n.,* 109 Minn. 275, 13 N. W. 120; *Katz* v. *M. F. G. Co.,* 183 N. Y. 578, 76 N. E. 1098, affirming same case in 109 App. Div. 49, 95 N. Y. Supp. 633; *Matter of Rapid. Transit Ferry Co.,* 15 App. Div. 530, 44 N. Y. Supp. 539; *State* v. *Bank,* 25 So. 318, 51 La. Ann. 426; *Andenried* v. *East Coast Milling Co.,* 68 N. J. Eq. 450, 59 Atl. 577, 584; *People* v. *Tibbetts,* 4 Cow. 358; *People* v. *Kip,* 4 Cow. 382; *Green* v. *Felton,* 42 Ind. App. 675, 84 N. E. 166; *State* v. *Jessup etc. Co.,* 77 Atl. 16, 30 L. R. A. (N. S.) 290; *Rex* v. *Darlington School Governors,* 6 Q. B. 682.

The very question here under discussion was decided in *Matter of Rapid Transit Ferry Co.,* 44 N. Y. Supp. 539, 15 App. Div. 530 and note; *Darring* v. *Hoff,* 99 Md. 491, 58 Atl. 196.

The case which the complainant cites in support of his contention that the by-law here in question is valid is *Ellsworth Woolen Manf'g. Co.,* v. *Faunce,* 79 Me. 440, 10 Atl. 250. In that case a by-law providing that no business should be transacted at a stockholders' meeting without the representation of a majority of the stock was held legal; because under the statute of Maine the matter of a quorum was left for the stockholders to determine. The real contention in that case was not over the validity of the by-law but over the question of the number of shares that should be counted in determining how many were necessary to a majority.

It appeared from the evidence that C. C. Baldwin, who either for himself or for those whose proxies he held, cast the votes at the election of directors March 21, 1911, then knew of the by-laws in question, that the by-laws including this one had been drawn up by F. W. Baldwin, an attorney, and reported for adoption by a committee of which C. C. Baldwin was a member, that some meetings since 1900 had been adjourned for lack of a quorum to transact buisness. But this and like evidence was immaterial.

A course of corporate action may, within the limits of corporate power, modify a by-law. *Buck* v. *Troy Aqueduct Co.,* 76 Vt. 75, 56 Atl. 285. But corporate action cannot affect matters which are determined by the general law or by charter. Such matters are beyond the control of the corporation. See *Henry*

*v. Jackson*, 37 Vt. 431. If it appeared that any of the stockholders failed of representation when the defendants were elected directors in consequence of any conduct which amounted to fraud or deception we should carefully consider the effect of such conduct. But nothing in the nature of fraud appears.

It is claimed by the complainant in that part of his brief given to a statement of facts that certain of the proxies by virtue of which votes were cast at the meeting of March 21, 1911, were not duly executed, and that so no legal votes could be cast by virtue of them. In one case this is clearly the situation, and in some other cases it may be, but the more proxies are treated as insufficient, the less is the number of votes necessary to a majority, and if all proxies are rejected about which any claim of illegality is raised the result stands unaffected. The complainant in that part of his brief devoted to the argument of the case, bases no claim upon the statement with regard to the insufficiency of some of the proxies.

Some parts of the record book of the corporation were introduced in evidence by the complainant. Among other things so introduced was the following:

"Record of minutes of a Stockholders' Meeting of the Percival Furniture C of the        held by order of

So. Royalton, at Jan. 31, 1811.

Agreeable to by law No. 1 stockholders of the Percival Furniture C are requested to meet at the Clerk's office in So. Royalton, Tues. Jan. 28, 1910, at 8 p. m.

E. F. MOODY, Clerk.

So. Royalton, Vt., Jan. 31, 1910.

Agreeable to above call, meeting was called to order by E. F. Moody, Clerk, as there was not stock enough represented to transact business it was moved by C. C. Baldwin that we adjourn until Mar. 21, at 8 P. M. vote was taken by ballot and was carried 70½ for 2 no.

E. F. MOODY, Clerk."

The foregoing was offered by the complainant as the record of the meeting of January 31, 1911. Assuming that it was so intended we note some remarkable things about it. It purports

·to be a "record of minutes" rather than a record of proceedings. It purports to be held "by order of So. Royalton." "At January 31, 1811." It is suggested that "1911" was intended. What purports to be a copy of the notice requests the stockholders to meet on Tuesday, January 28, 1910, at 8 P. M. Now 28 January did not fall on Tuesday in 1910, nor in 1911. It last fell on Tuesday in 1908. In 1911, the last Tuesday in January fell on the 31st of the month. The record of proceedings at the meeting is dated January 31, 1910. In introducing it, counsel for complainant suggested that "1910" should read "1911." It recites that the meeting was held "agreeable to above call." But of course no date could be agreeable to that set out in what purports to be the "call." Assuming that this record was intended to relate to the annual meeting in January, 1911, as quite likely was the case, we are furnished with no record relating to the annual meeting in 1910, nor any record of the annual meeting in 1908, the last year in which the 28th of January fell on Tuesday. The records which are furnished us are of meetings in 1902, 1907, 1909, and 1911. How such a record came to be made up it is impossible to conjecture. How we should construe it if construction of it became necessary we do not undertake to say.

The complainant in his brief claims that no legal meeting was held January 31, 1911, and cites *Stevens* v. *Eden Meeting House*, 12 Vt. 688, where oral evidence of the posting of warnings and of corporate proceedings was objected to and excluded and its exclusion was held proper. But regarding the meeting under consideration here the complainant has produced oral evidence and he cannot be heard to say and does not say that it should not be given such consideration as its natural probative value entitles it to.

The complainant called as one of his witnesses E. F. Moody, clerk of the corporation at the time of the sending out of notices, and in direct examination took his testimony that he and C. F. Percival together, sent out the notices for the annual meeting in January, 1911, and that that meeting was called for January 31, 1911.

The complainant called C. F. Percival above mentioned, and took his testimony about the sending out of the notices for

the annual meeting. He testified that he had to do with it; that he knew when the meeting was called for; and that it was called for January 31, 1911.

It is immaterial whether the notices were dated or not. The "record" to which reference has been made, shows no date to what is there recorded as a notice. What the by-law requires is that the notices shall be "mailed" a certain length of time before a meeting.

It does not expressly appear by the evidence when the notices for the annual meeting on January 31, 1911, were mailed to the stockholders. But the complaint sets out that they were issued and mailed to each and every stockholder in accordance with the by-laws. The complaint is sworn to by the complainant who makes oath that he has read the same and knows the contents thereof and that it is true of his own knowledge. It is obvious that he could have had no personal knowledge of many of the things stated in the petition, and this is conceded by his counsel who attribute the situation to their inadvertence. The defendants insist that because of the erroneous oath the complaint should be dismissed. But as the matter is presented we decline to act upon that motion. The fact remains, however, that the petitioner may be presumed to know of his own knowledge whether he received a notice of the meeting of January 31, and if he received one, when he received it, and whether or not the notice, if received, was correct in every respect. This being so, he has failed to give testimony in this case. In these circumstances it must be taken that the notices were seasonably sent out, for, as has been seen, the statute requires the complaint to set out the facts relied on. Further the burden was upon the complainant to go forward in the proofs and to make out a case against the defendants. *State ex rel Danford* v. *Hunton,* 28 Vt. 594.

The case cited above was one in which the defendants were charged with having usurped the office of directors in a private corporation. The Court there said: "The form of the issue, requiring the defendants to show cause, would seem to indicate, in form, that the defendants would be required to go forward in the case. But it seems to us that the form of the issue in the case does not correctly define the true position of the parties, in regard to the presumption of right. The defendants are in possession

of the office in question, and should be presumed regularly elected and entitled to hold until the contrary be shown. The plaintiffs, then, are bound to make a case against them, and they should go forward in the proof and in the argument."

The result is that all the issues respecting the annual meeting January 31, 1911, whether made by the pleadings or by the evidence, are found in favor of the defendants and it is established that a meeting was regularly called for that day, was legally held, and was legally adjourned to March 21, 1911. The evidence as to the adjournment, aside from the record, has not been particularly referred to, but both sides introduced evidence on that point without objection and all the evidence was to the effect above stated.

The petitioner suggests that the stockholders, except C. F. Percival, were not notified of the adjourned meeting. This appears from the testimony of Clerk Moody who testifies that after the adjournment of the meeting of January 31, 1911, he sent a copy of the proceedings to C. F. Percival but did not send notices to the stockholders, since he did not find that notices of adjournments had been sent out in previous years. But notices of the adjourned meeting were not necessary, since they were not required by the by-laws nor by any general law.

The meeting of March 21, was adjourned, after the election of directors and a clerk, to March 29, 1911, at the office of W. W. Reirdon, in Barton. It is claimed by the complainant that at that meeting resolutions declaring the election of the directors chosen March 21, to be illegal because not in accordance with the by-laws, were read and adopted, and that thereupon a board of directors consisting of the complainant, and six others, being the same directors who were elected at the annual meeting in January, 1910, were chosen as directors.

The doings at this meeting are matters of very conflicting testimony.

Three witnesses testify that the resolutions were read and adopted, and five that they were neither read nor adopted.

But it is unnecessary to settle the dispute over the doings at this meeting. These resolutions, if adopted, were not a reconsideration of the vote electing directors at South Royalton on the 21st of March. They undertook to create vacancies

by resolving that a previous election, was illegal, when, in fact, it was strictly legal. The resolutions, if adopted, were of no sort of effect, and the choice of men to fill vacancies which did not exist was an idle form.

Some testimony was introduced by the complainant to the effect that the defendants had voted salaries to the amount of twenty-five hundred dollars, including one hundred dollars to each director, that the directors had theretofore been paid nothing, and that the aggregate of salaries had theretofore been less than twenty-five dollars; and it is claimed that by so voting salaries the defendants disregarded the interests of the company and that their conduct in this regard should be considered on the ground that the issuance of a writ of *quo warranto* is discretionary with the Court.

It is true that, in a *quo warranto* proceeding to try the title to an office, the writ does not necessarily issue because the defendant's title is shown to be defective. Within the limits of a fairly well defined judicial discretion, the Court may still refuse to grant the writ. But the Court has no discretion to issue the writ unless the defendant's title is shown to be defective.

*Complaint dismissed with costs.*