STATE EX REL. JOSEPHINE M. MARTIN *v.* CORTIS M. FOLEY ET AL.

STATE EX REL. EUGENE S. WRIGHT *v.* DANIEL J. KEELAN ET AL.

May Term, 1915.

Present:  MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed June 28, 1915.

*Schools and School Districts—Annual Meetings—Time—Authority to Fix—No. 65, Acts 1910—Officers—Eligibility— "Citizen"—Quo Warranto—Title to Public Office—Discretionary Power—Costs.*

The power of a town to fix a time for holding its annual meeting for the election of school directors and for other school purposes, as authorized by §4, No. 65, Acts 1910, is not exhausted by one experiment, but may be exercised again at a subsequent annual town meeting, when the town may return to the date fixed by the general law for holding its annual meeting for school purposes.

Under an article in the warning of an annual town meeting in 1913: "To see if the town will vote to hold its annual town meetings for the election of school directors and other school purposes on the first Tuesday in March, commencing with the first Tuesday in March, 1913," the town meeting could vote to fix the time for the election of school directors on the first Tuesday in March, 1913, and thereupon proceed to elect school directors.

The right of a person to be a school director is not determined by P. S. 986, but by P. S. 987, as amended by §5, No. 65, Acts 1910, which requires for that office no other qualification than citizenship in the town, and so a woman 21 years of age or over, who has always resided in a town, is qualified to hold the office of school

13

director of that town, regardless of whether her list was taken at the annual assessment preceding her election.

Where at its annual meeting in 1913 a town rescinded the vote of 1912, fixing June 26 as the date of holding its annual school meeting, and voted thereafter to hold its annual school meeting on the first Tuesday of March, and the warning of the annual town meeting in March, 1914, contained an article looking to a vote on the question of rescinding the vote of 1912, but the meeting passed over that article, it could thereupon proceed to elect a school director conformably to the general law.

Where the claimed term of one who has in good faith acted as superintendent of schools is about to expire, and his report to the school directors is about due, the court on *quo warranto* will not oust him, though his title is defective.

Since in *quo warranto* proceedings to test the right to a public office such costs may be awarded as is equitable, where the action of a town brought about the situation of uncertainty that gave rise to *quo warranto* proceedings to test the right of respondents to hold the office of school directors, costs are awarded neither party, though respondents are ousted.

PETITIONS for writs of *quo warranto* by the State, on the relation of Josephine M. Martin, against Cortis M. Foley and Charles H. Farnsworth, and by the State, on the relation of Eugene S. Wright, against Daniel K. Keelan, Cortis M. Foley, and Charles H. Farnsworth, brought to the Supreme Court for the County of Franklin at its February Term, 1915, and heard at its May Term, 1915, on the pleadings and on testimony taken and filed. The opinion states the case.

*P. H. Coleman* for the petitioners.

*J. W. Redmond* for the respondents.

HASELTON, J. We have here two petitions for writs of *quo warranto* brought under P. S. Chapter 97, and heard as one case. The right of the respondents Foley and Farnsworth respectively, to hold the office of school director in the town of Montgomery is challenged; and though the respondent Keelan is agreed to be a legal school director and entitled to act as such,

his right to exercise the office of superintendent of schools of the town named is challenged.

School directors are to be elected at the annual town meeting in March unless otherwise provided; but by Acts of 1910, No. 65, §4, it was provided that, if on due notice in the warning a town so votes at an annual March meeting, it may fix a date not earlier than May 1, nor later than June 30, for holding annual town meetings for the election of school directors and for other school purposes.

In 1912, the warning for the regular town meeting of the town of Montgomery, notified the voters that one of the purposes of the meeting was to see if the town would vote to hold its annual town meeting for the election of school directors and for other school purposes as authorized by the Act of 1910. At the meeting, under this notice or article in the warning, the town voted to hold its annual town meeting for the election of school directors, and other school purposes as authorized by the act referred to "in the evening of the 26th day of June."

In the record of the vote the word "meeting" instead of "meetings" is used. The respondents, however, call our attention to the testimony of the respondent Foley, who, as moderator, put the motion, and who testifies that as it was made, put and carried the word was "meetings." The relators on the other hand call attention to the testimony of C. A. Gardyne, an assistant judge of Franklin County Court, who was clerk of the meeting, and who testifies that the motion as made and put to vote, contained the word "meeting" and not "meetings." Both sides agree that the date fixed was June 26, in the evening, a rather awkward date, if as the respondents claim, it was fixed irrevocably for future years, since every few years June 26 would come on Sunday, and rather uncertain in its designation of the "evening." For to say nothing of the various uses of the term elsewhere, the word "evening" in this locality means, probably, from the usual supper-time to the usual bed-time, and these limits are somewhat indefinite. In the circumstances, we find the vote to have been as the record shows it. But the date was not fixed irrevocably, for the power of the town to fix the date at a March meeting was not exhausted by one experiment. The purpose of the act would be defeated by any such unnecessary construction.

June 26, 1912, in accordance with the vote mentioned the annual school meeting of the town of Montgomery was held and such action was taken, that the school directors July 1, 1912, consisted of respondents Farnsworth, Foley and Keelan, their respective terms of office to continue until June 30, in the years 1913, 1914 and 1915, and in each case until the election of a successor. The evidence shows to our satisfaction that the attendance at the school meeting held in the evening of June 26, 1912, was somewhat small and, so unsatisfactory. At any rate, in the warning of the annual March meeting, in the spring of 1913, an article was inserted which reads: ''To see if the town will vote to hold its annual town meetings for the election of school directors and other school purposes on the first Tuesday in March, commencing with the first Tuesday in March, 1913.''

It is claimed by the respondent that if the town wished to change back to its March meeting, as the time for electing school directors, it could, in any view, do so only at a meeting held June 26, but we think the claim is unsound. Whatever the voters of a town are authorized to do in respect to town officers, they can do in the annual March meeting, if the warning for that meeting is broad enough. At the meeting so warned the town voted to hold its annual town meeting, for the election of school directors and other school purposes, on the first Tuesday of March annually, beginning with the first Tuesday in March, 1913; and thereupon the town proceeded to elect the relator Josephine M. Martin, school director for a term of three years to succeed the respondent Farnsworth.

The respondents claim that even if the town had a right at the meeting to make the change, as to the time of choosing school directors, it had not, under the warning, authority to elect school directors at the March meeting in 1913. But the warning was explicit notice to the voters that, if the time of election was changed, they were to commence electing at the March meeting in 1913. The warning was explicit as to the proposition to be voted on, no one could have been misled, and when the article in question was acted on affirmatively it was the duty of the meeting to proceed to elect a successor to the school director whose regular term would expire July 1, 1913. But it is urged that Miss Martin was ineligible to the office of school directors as ''her list was not taken,'' in either of the years 1912 or 1913. She was born in Montgomery, she has always resided there, at the time of

her election she was more than 21 years of age, and since 1908 she has been the owner of real estate in the town, and has had a grand list in 1909, 1910, 1911 and 1914. In 1912 and 1913 her real estate was set in the list to her father, so that her list was not taken in those years, though she indirectly paid the taxes on her real estate. We assume that the fact that her list was not taken in 1912 was fatal to her right to vote in town meeting regarding school officers in 1913 as otherwise she might have done. P. S. 3416, 986; *School District* v. *Bridport,* 63 Vt. 383, 22 Atl. 570.

And where the qualifications of officers to be elected in town meeting are not otherwise stated it seems a reasonable construction of the statute, P. S. 3426, as amended by Acts of 1912, No. 118, to say that the voters are to choose such officers from among themselves, that is, from among those qualified to vote in the meeting. This was said in substance in *Clarendon* v. *Brown,* 55 Vt. 61, in construing substantially the same statute that we now have. And see *Quinn* v. *Halbert,* 52 Vt. 353, 366. But where the qualifications of an officer are clearly fixed by statute, there is no room for construction. Thus for a long time a woman 21 years of age, with one year's residence in a town has been eligible to the important offices of town clerk and town treasurer. P. S. 3429. So also the qualifications of a school director are exceptional, and the right of a woman to be such is not determined by P. S. 986, which the respondents invoke, but by P. S. 987 as amended by Acts of 1910, No. 65, §5, which requires for that office no other qualification than citizenship in the town.

Under the old school district system the law was explicit that the prudential committee of a school district must be "men" 21 years of age, resident in the district and taxable therein, and so, as the law then was, legal voters in the district. Revised Laws, pp. 112, 113, §§7, 9; Compiled Statutes, p. 146, §§23, 25; General Statutes, p. 153, §§29. 32.

It was not, however, until 1864, that a voter in a school or town meeting was required to have the additional qualification of citizenship. Acts of 1864, No. 12. In 1868 it was made clear that a person must reside in a district, and be qualified to vote in town meeting in order to be a voter in the district school meeting. Acts of 1868, No. 39.

In 1869 the qualifications of voters in town meetings were restated and the phrase "male citizen" was substituted for

"male person." Acts of 1869, No. 50. Compare General Statutes, 105, §1. So, down to 1869, voters in town meeting and school district meetings must be "males," and the officers elected by them, no qualifications being prescribed, must be males.

The next year, 1870, educational matters received much attention, and the Legislature provided that towns might experimentally abolish the school district system and establish the town system.. And it was then provided that any town doing so might elect three or six school directors, required to be "citizens" of such town, but not "male citizens." The legislative intent was, as we think, to permit a town to avail itself of the services of women in the capacity of school directors. The people of the State were already familiar with the value in many communities of the services of women as postmasters. The meaning of the word "citizen" had been sharply and broadly defined in the Fourteenth Amendment adopted in 1868, and in examining our Legislation in 1869 and 1870 and subsequent years, we are satisfied that if the Legislature had meant "male citizens" in the act under consideration prescribing the qualifications of town school directors they would have said so.

In 1880, the Legislature went a step further and provided' that women might be chosen superintendents of schools, which comports with the idea that they were already citizens eligible to be school directors.

In the revision of 1880, not in the Session Laws of that year, upon the recommendation of the commissioners, Mr. Willard and Judge Veazey, the Legislature inserted in the statutes a definition of the word "citizens" which could not possibly be understood to exclude women. R. L. §61.

The commissioners in their report remarked that there ought to be such a definition and that there was none, except that in the Acts of 1864, No. 12, which applied only in special cases. Having recommended the definition of "citizens," which the Legislature adopted, the commissioners came to the revision of the school laws, and after remarking upon the extent to which they were discordant and involved, and, having their definition of "citizens," before them, they recommended no change in the statement of the qualifications of school directors under the town system, and the Legislature made none. Report upon the Revision of 1880, pp. 26, 38; R. L. 594. And so prescribed qualifications of town school directors, though several times reenacted,

have since remained unchanged.  Acts of 1892, No. 20, §4;
Acts of 1894, No. 15; V. S. 669; P. S. 987; Acts of 1910, No.
65, §5.

And all this time the definition of "citizens" has remained
unchanged.  V. S. 60; P. S. 67.

Our Court rules, adopted by legislative authority, require
that every applicant for admission to the bar of this State shall
be a "citizen" of the State; and when a few years ago a woman,
otherwise qualified, made application for admission we did not
undertake to read the word "male" into the rule but admitted
her to the bar, because having the other qualifications and being
a "citizen" she was entitled to admission.  We are not aware
that we have ever held that the word "citizen" without any
qualification means a "male citizen."  See here *Minor* v. *Hop-
persett,* 21 Wall. 162, 165, 168, 169, 22 L. ed. 627.

That as a matter of law a woman may be a citizen, and that
as matter of law applied to the facts proved here, Miss Martin
was a citizen of Montgomery, at the time she was chosen as
school director of that town, are propositions beyond question.
She duly took the oath of office and furnished the required bond,
and July 1, 1913, became school director of the town of Mont-
gomery, in the place of the respondent Farnsworth, whose term
then expired.

The testimony shows that considerable discussion followed
the action taken by the town at the March meeting in 1913, and
that some claimed that the town had not in form or effect
rescinded the vote of 1912, fixing the date of holding the annual
school meeting June 26, in the evening.  Accordingly in the
warning of the March meeting for 1914, an article was inserted
looking to a vote upon the question of rescinding the vote of
1912.  But the meeting when assembled passed over the article
in the warning, took no action upon it, and proceeded to elect a
school director, conformably to the general laws, to succeed the
respondent Foley; for if the town had a right to proceed under
the general law, that was the time for electing Foley's successor.
And the town had a right to proceed under the general law, for
it needs no nice discussion to show that by its action in 1913, it
had undone what it did in 1912, about holding its annual meeting
for the election of school directors, and other school purposes,
June 26, in the evening.  As Foley's successor, the town at the
March meeting in 1914 elected the relator, Eugene S. Wright,

who was duly qualified. So July 1, 1914, neither the respondent Farnsworth nor the respondent Foley, was a school director of the town of Montgomery, but the school directors were D. J. Keelan, Josephine Martin and Eugene S. Wright. This board elected Daniel Keelan as chairman and Eugene S. Wright as superintendent of schools, and the respondents, two of whom were not legal school directors, chose Daniel Keelan as superintendent of schools; but in his sworn answer he makes the averment which nobody denies, and which we find to be true, that he has advised with the relator Wright concerning school matters. The office of superintendent of schools was an annual office. P. S. 933, as amended by Acts of 1910, No. 65, §2. Doctor Keelan's term is about to expire, and, having acted as school superintendent, his report to the school directors appears to be due on or before June 30, 1915, a date soon to arrive. P. S. 937 as amended by Acts of 1910, No. 65, §3. Although his title is defective it is discretionary with us whether or not to disturb him in the exercise of his office as superintendent. *State* v. *Mead,* 56 Vt. 353; *Pomeroy* v. *Kelton,* 78 Vt. 230, 62 Atl. 56; *Clark* v. *Wild,* 85 Vt. 212, 81 Atl. 536, Ann. Cas. 1914 C, 661. We think that in the exercise of a sound discretion he should be allowed to serve out the remaining and minute fraction of his term of office as superintendent. Therefore, the petition as to him should be dismissed. The complaints of Josephine Martin and Eugene S. Wright against Cortis M. Foley and Charles H. Farnsworth ought to and do prevail. Questions made by the pleadings but not relied on in the respondents' brief are not considered; neither are questions considered that are rendered immaterial by our findings and holdings already stated.

The difficulties in the case have arisen largely from the necessity of construing our school laws as they stood before the legislation of the present year.

In these proceedings costs may be adjudged as is equitable. P. S. Chapter 97. The action of the town brought about such a situation of uncertainty that in all the circumstances of the case costs should be awarded to neither party. The respondents Farnsworth and Foley are respectively adjudged not to be entitled to exercise the office of school director in the town of Montgomery, and judgment of ouster is rendered against them as if the writs prayed for had issued in the first instance, as is provided by P. S. 1974.

Judgment is rendered that Josephine Martin and Eugene S. Wright are duly elected and qualified school directors of the town of Montgomery and authorized to act as such.

*The petition which makes D. J. Keelan a party is dismissed as to him.    No costs are awarded.*