## 18094

Mrs. Rose S. REEDY, Miss Frances Rose Reedy, John Gregg McMaster and Robert J. Thomas, Appellants, v. B. G. ALDERMAN *et al.,* Respondents.

(131 S. E. (2d) 689)

*Messrs. John Gregg McMaster and Robert J. Thomas,* of Columbia, *for Appellants,*

John G. Dinkins, Esq., of Manning, for Respondents, 

Messrs. Daniel R. McLeod, Attorney General, Grady L. Patterson, Jr., Assistant Attorney General, of Columbia, for Amicus Curiae,

July 9, 1963.

BRAILSFORD, Justice.

. The question involved on this appeal ·is .whether appellants, who own .fifty· per cent of the· capital stock .of The Bank of Clarendon, ăre· 'entitled to̒ reversal. of. anꞓorder·ꞷof'

the circuit court dismissing their petition for a writ of mandamus requiring the respondents, who own fifty per cent of the stock, *and the appellants* to hold a stockholder's meeting and elect by cumulative voting a board of directors to succeed the present board, the members of which are holding over.

The petition alleges that respondents have refused to hold an election and have blocked appellant's efforts to do so and have thereby deprived appellants of their constitutional and statutory right to vote for directors by cumulative balloting.

The appellants Reedy are the widow and daughter of the late F. C. Reedy, who was an organizer of the Bank and who served as its president until his death in 1957. He owned fifty per cent of the capital stock which was distributed 1200 shares to his widow and 300 shares to his daughter. Mrs. Reedy was elected to the board of directors, the membership of which was increased from seven to eight, including all stockholders of the closely held corporation except Mr. Dinkins, the Bank's attorney, and young Miss Reedy. The latter became a director on attaining her majority some times prior to 1962. There have been no changes in the membership of the board since Miss Reedy's election.

The respondent R. R. DuRant, Jr. succeeded Mr. Reedy as president. Under his leadership and with the assistance of the staff and experienced directors, who have the confidence of the community, the Bank has prospered. During the five-year period ending December 31, 1962, cash dividends of $69,000.00 were paid on capital stock having a par value of $150,000.00 and during the same period the stockholders' equity increased by $160,000.00. Yet, it is undisputed that since her husband's death Mrs. Reedy has assumed an antagonistic and uncooperative attitude toward the officers and other directors of the Bank, in which she is supported by her daughter. The record is silent as to the reason or reasons for this, and as to the issues on which the parties' views have been disparate. It does indicate that respondents have

been diligent in trying to reconcile differences (through their own efforts and by seeking the intervention of supervisory authorities) and that Mrs. Reedy has been uncooperative.

At the annual stockholders' meeting in January, 1962, inferentially, because of Mrs. Reedy's insistence on a greater proportional representation on the board, which could have been accomplished only by reducing its membership, a stalemate developed. Consequently, no election was held and the nine member board held over under the Bank's by-laws, which provide for annual elections of directors and for holding over but do not specify the numerical composition of the board.

Mr. John Gregg McMaster and Mr. Robert J. Thomas, members of the Columbia Bar, accompanied the Reedys to a duly called annual stockholders' meeting on January 11, 1963, and were introduced as their attorneys. At Mrs. Reedy's request, ten (10) shares of her stock of the aggregate par value of $500.00 (See Section 8-103.1, Code of 1962) were transferred to each of these gentlemen, who thereupon participated in the meeting as members of the Reedy faction of stockholders.

At this meeting, Mr. Dinkins moved the re-election of the "present directors". Mrs. Reedy and Mr. McMaster voiced their opposition. A vote on the motion resulted in 1500 for and 1500 against. After a discussion, the meeting was recessed for one week. When the meeting re-convened, Mr. McMaster made the point that the business before the body was that of nominating and electing nine directors. He undertook to place in nomination the four members of the Reedy faction and as proxy for them to cast cumulatively 3001 votes for each. On Mr. Dinkins' point of order, Mr. DuRant, presiding, ruled that nominations were not in order and votes could not be cumulated until a motion was adopted designating the number of directors to be elected for the year. Mr. McMaster and Mr. Thomas challenged the soundness of this ruling. Upon the chair's adherence to it, Mr. Thomas, reserving the position that no motion was neces-

sary, moved that the meeting proceed to nominate and elect nine directors. This motion failed by a tie vote. Mr. Dinkins then moved to adjourn, which also failed by a tie vote. Mr. McMaster requested and was granted a short recess, after which he made the following motion, which was seconded by Mr. Dinkins and adopted:

"Mr. President, I move to recess until a majority of the stockholders agreee to re-convene, or to such other time as directed by Court of Competent Jurisdiction, or until the next Annual Meeting, whichever first occurs."

This proceeding for a writ of mandamus was commenced February 15, 1963.

Implementing Art. IX, Sec. 11 of the Constitution of South Carolina, Sec. 12-253, Code of Laws 1962 provides:

"At all stockholders' meetings each stockholder shall be entitled to one vote for each share of stock held or owned and shall be entitled to vote in person or by proxy for directors, trustees or managers, as provided in Section 11 of Article IX of the Constitution of this State, that is to say that in the election of directors, trustees or managers of each and every such corporation each stockholder shall be allowed to cast, in person or by proxy, as many votes as the number of shares he owns multiplied by the number of directors, trustees or managers to be elected, the same to be cast for any one candiate or to be distributed among two or more candidates."

A ground of decision by the circuit court was that the number of directors to be elected is not fixed by the by-laws of the corporation or by any provision of law. Therefore, it is necessary for the stockholders to determine the numerical composition of the board before an election can be held. Manifestly, there can be no election of directors by cumulative voting, which appellants seek, without a certain number to be elected. The court has no authority to designate the number and has not been asked to do so. Appellants recognize that the stockholders have the authority to decide at each

annual meeting how many directors shall be elected. However, they contend that the present composition of the board fixes the number to be elected in 1963, in the absence of affirmative action of the stockholders fixing a different number. We quote from the appellants' argument of the point.

"* * * There are in fact nine directors. The stockholders' meeting was called to elect their (the nine) successors. The blocking of an election by Respondents was calculated to result in the same nine directors holding over. It is thus plain that the unanimous acquiescence and consent of all the stockholders for two years to a board composed of nine directors has the legal effect of supplying that number for the omitted number in the by-laws. * * *"

We do not so read the record, which is consistent with the inference that a nine member board was elected for the first time in 1961 in order to make room for Miss Reedy. This board continued to serve after 1961 only because a stalemate between stockholders prevented the election of new directors. The stalemate persists and the board continues to hold over under the corporate by-laws—not because of the unanimous consent of the stockholders to their continuance in office or to the election of a board of nine members.

Appellants rely upon the principle that a corporate "by-law may be modified by unanimous consent of the stockholders to a regular course of corporate action inconsistent therewith * * *," citing and quoting from *Buck v. Troy Aqueduct Company,* 76 Vt. 75, 56 A. 285, as a case in point. In the *Buck* case, which is the only authority cited by appellants in support of this contention, the corporate by-laws called for five directors, but only three were elected from 1882 to 1892. At the time of the transaction in question, the three directors were the only stockholders and the case did not involve a dispute among them. The facts are clearly inapposite and need not be stated.

Compare In re Ivey and Ellington, Inc., 28 Del. Ch. 298, 42 A. (2d) 508, which did involve a stockholder dispute over the number of directors to be elected.

558

Here there has been no course of conduct from which an intention on the part of the stockholders to settle upon nine as the number of directors to be elected from year to year could be inferred. The number of directors has varied from a low of two to a high of nine. There have been decreases from one year to the next, as well as increases. Until this controversy arose, the stockholders at each annual meeting agreed upon the number of directors and the persons to be elected. Neither the election in this manner of a board of nine in 1961, nor the holding over of that board, determines the question of how many shall be voted for by cumulative balloting in 1963. This critical question must be decided by the shareholders before the election demanded by appellants can be had. Until this is done, appellants' right to nominate directors and to vote for them in this manner is contingent and is not enforceable by mandamus, which will issue only to enforce a clear legal right requiring the performance of only ministerial duties. 13 West's South Carolina Digest, Mandamus, §§ 10-12.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.