State, ex rel. Mitchell, v. Tolan.

---

## THE STATE, EX REL. OF JOHN F. MITCHELL, v. HUGH TOLAN.

1. When an election for officers of a municipal corporation was held on a wrong day, without objection, and by a pure mistake, which was not discovered by any person interested, either as an officer of election or candidate or voter, until after the election was held, and where there was no pretence of fraud or corrupt motive on the part of any person concerned in the election, which was participated in by a large majority of the qualified voters in the city, the court, in the exercise of its discretion, may properly refuse to allow an information in the nature of a *quo warranto* against the defendant, who was chosen an alderman at said election, to inquire by what authority he held and exercised his office.

2. The granting or withholding of leave to file such information, at the instance of a private relator, making no claim to the office, rests in the sound discretion of the court even where a good objection to the title of the person whose right is called in question is shown.

3. That a successful prosecution of the proceedings would result in the suspension of all municipal government in the city for nearly a year, ought to control the discretion of the court, unless the ends of justice demand the application of such severe remedy.

4. The acts of an officer *de facto* are valid, so far as the rights of the public or third persons are concerned.

5. The allowance of costs is in the discretion of the court.

In matter of *quo warranto.*

A rule to show cause why an information in the nature of a *quo warranto* should not issue against the defendant, to inquire by what authority he holds and exercises the office of alderman of the city of New Brunswick, was applied for and allowed by this court, at June Term, 1868.

Similar rules were allowed against Warren Hardenburgh, Edward Maher, Henry Vandenburgh, Joseph Oram, Cornelius Snediker, and Thomas Greenwood, who also claim to be aldermen of said city. These several rules were set down for hearing for a subsequent day in the same term, and were then argued before the CHIEF JUSTICE, and Justices VREDENBURGH, DALRIMPLE and DEPUE.

For the state, *A. V. Schenck.*

For the defendant, *H. V. Speer.*

The court, after argument, directed the rule to be discharged, and at the present Term of November the following opinion of the court was pronounced by

DEPUE, J. By the act revising and amending the charter of the city of New Brunswick, approved March 18th, 1863, (*Acts* 1863, *p.* 347,) the common council of said city is composed of twelve aldermen, elected in the several wards of the city, and to hold office for the term of two years; six of whom are to be elected at the annual city election, in each year. By this act, the time for holding the election for city officers was fixed on the second Tuesday of April in each

State, ex rel. Mitchell, v. Tolan.

year. By a subsequent amendment to the charter, passed on the 26th of February, 1868, the time of holding the election for city officers was changed from the second Tuesday in April to *the Tuesday* after the first Monday in March, in each year. *Acts* 1868, *p.* 124. The first Tuesday after the first Monday in March last, came on the third day of March, and the last city election was held on the tenth day of March, which was the second Tuesday after the first Monday in March.

The holding of the election on the tenth of March was due to a misapprehension as to the time named in the act of 1868 for the election. What purported to be a copy of the act, was procured and inserted in the newspapers of the city by the city clerk. In that copy, the day for the election is stated to be the second Tuesday after the first Monday in March. The notice for an election on that day was duly published by the city clerk, under the provisions of the city charter, and the election was held without objection by the officers of election, which was participated in by a large majority of the qualified voters in the city. The fact that the day named in the amendment of 1868 was not the second Tuesday after the first Monday in March, was not discovered by any person interested in the election, either as an officer of election, a candidate, or a voter, until after the election was held. There is no reason to doubt the good faith of the clerk, in publishing what was understood to be a copy of the law, and in giving the notices of the election.

At the election so held on the tenth of March, six of the aldermen named above were elected, and the other Mr. Greenwood, was elected at a special election, ordered by the new common council, to fill a vacancy caused by the refusal to serve of Henry Blumer, who was elected an alderman at the election held on the tenth of March.

The granting or withholding of leave to file an information in the nature of a *quo warranto*, at the instance of a private relator, rests in the sound discretion of the court,

even where a good objection to the title of the person whose right is called in question is shown.

In *Rex* v. *Dawes* and *Rex* v. *Martin*, 4 *Burr*. 2122, which are known as the *Winchelsea Cases*, Mr. Justice Yates says : " In all questions of this kind, one great distinction is always to be attended to, that these are applications by common relators who have no inherent rights of prosecution, but, by the statute of Queen Ann, are left to the discretion of the court, whether they shall be permitted to prosecute or not. In the exercise of this discretion the court is not merely to consider the validity or defect of the defendant's title, but the expediency of allowing or stopping the prosecution under all its circumstances." In that case, Lord Mansfield, in the exercise of that discretionary power, viewed the facts of the case—*first*, in the light in which the relators, informing the court of the defect of title, appear, from their behavior and conduct, in relation to the subject matter of their information, previous to their making the application. *Secondly*, in the light in which the application itself manifestly shows their motives, and the purpose which it is calculated to suit ; and, *thirdly*, the consequences of granting the information ; and the application for leave was denied, although it appeared clear that the title of both the defendants was invalid. *King* v. *Parry*, 6 *A. & E.* 810 ; *Cole on Criminal Informations* 165 ; *Grant on Corporations* 253 ; *Willcock on Corporations* 476 ; *State* v. *Utter*, 2 *Green* 84.

The rules which ordinarily govern the court in the exercise of this discretionary power, appear to be these : *first*, that the relator is not a mere stranger coming in to disturb a corporation with which he has no concern. *Secondly*, that he has not concurred in the act which he afterwards complains of as illegal ; and, *third*, in the absence of fraud, or a willful violation of law, that public or private interests will not be seriously impaired by the ouster of the officer whose title to office it is proposed to inquire into.

The relator is not a contestant for the office of either of the persons named as a defendant. He is a tax-payer and

legal voter in the city of New Brunswick. As an inhabitant of the city, and subject to its municipal government, he is interested in the due election of the members of the city council. He has, therefore, a sufficient interest to support his right to interpose. *King* v. *Parry*, 6 *A. & E.* 810 ; *The Queen* v. *Quail,* 11 *A. & E.* 508 ; *Grant on Corporations* 254. Whether the fact that he voted at the election, the legality of which he seeks now to call in question, without making any objection as to the manner or time of holding it, will deprive him of the right which he otherwise has of appearing in court as a relator, the disposition of the case on another point makes it unnecessary to consider.

The next question will be as to the expediency of permitting the inquiry into the title of these defendants to proceed. That question is entirely independent of the question whether the title of the defendants is valid or not. It involves nothing more or less than, conceding that the defendant's title is bad, will the public interest be injuriously affected by a successful prosecution of proceedings to oust the defendants from their office ?

By the twenty-eighth section of the charter of the city, a majority of the whole number of aldermen is required to constitute a quorum for the transaction of business ; a smaller number has power to adjourn from time to time and compel the attendance of absent members, but the attendance of seven of the aldermen is necessary to constitute a legal body to transact the business of the corporation. If these proceedings are conducted to a result which shall oust these defendants from office, the corporation will be left without a sufficient number of aldermen to constitute a quorum in the council, and practically without any municipal government, or power to obtain a government by filling the vacancies so made, until the next annual city election. That the application against a member of a corporation is based on grounds affecting his individual title, which applies to the title of every other member of the corporation, and that the effect will be to dissolve the corporation, is not of itself and stand-

ing alone, as a proposition of law, or a settled point of practice, a ground for refusing leave to file an information. But such a circumstance will influence the court in the exercise of its discretion. In *The King* v. *Trevenen*, 2 *B. & Ald.* 480, Abbott, C. J., says: " In the case of individual members of a corporation, it is wholly within the discretion of the court to say whether such an information ought to be granted or refused. The court have undoubtedly in some cases permitted these informations to be filed where the effect has been to dissolve the corporation, but that has been when strong cases have been made out. See *Cole on Cr. Inf.* 125–163; *Rex* v. *Parry*, 6 *A. & E.* 810; *Rex* v. *White*, 5 *A. & E.* 613; *The King* v. *Bond*, 2 *T. R.* 767; *Willcock on Corp.* 469. .

The circumstance that a successful prosecution of these proceedings must result in the suspension of all municipal government in the city, for the period of nearly a year, ought to control the discretion of the court, unless the ends of justice demand the application of that severe remedy.

It is not alleged that the holding of the election on a day different from the day fixed by law, was induced by any corrupt, fraudulent, or indirect motive. It is shown that it was the result purely of a mistake. The number of votes cast at the election, shows that the election was largely attended by the qualified voters. There is no complaint that it was unfairly conducted, nor that a single voter was prevented from exercising his franchise of voting, because of the time of holding the election. In all other respects, except as to the day, the election was held in complete accordance with the law. In that respect the non-compliance was due to an honest mistake. Circumstances such as those here stated, induced the Court of King's Bench, in *The King* v. *Parry*, to refuse leave to file an information, where the title of the defendants was clearly defective.

If it appeared that the non-compliance with the law was induced by any fraudulent motive, or was prompted by an intent to disregard the law, the court would, without any hesitation, set aside the election, leaving the responsibility of

State, ex rel. Mitchell, v. Tolan.

the consequences to be borne by those who corruptly or wil-
fully refused to conform to the provisions of the law ; and
possibly a desire to leave open no avenue by which a disregard
of the provisions prescribed by the legislature for conducting
popular elections might enter, would induce the court to inter-
fere in this case, if any means were provided for supplying the
vacancies created by ousting these defendants, or for continuing
the city government, without their presence in the city coun-
cil. It is useless to speculate on such a state of facts. For
present purposes, it is sufficient that the consequences that
would follow an ouster of these defendants, are sufficient to
induce the court, in exercising its discretion, to refuse permis-
sion to file the information.

It was urged on the argument, that a majority of the com-
mon council having been elected in an unlawful manner, its
acts will be void, and that, permitting the council thus consti-
tuted to maintain the semblance of a city government and
attempt to exercise its functions, will tend to introduce confu-
sion into the affairs of the city. We have no apprehension of
any such consequences. Premising that an officer *de facto* is
one who exercises the duties of an office under a color of right,
by virtue of an appointment or election to that office, as dis-
tinguished on the one hand from a mere usurper of an office,
and on the other from an officer *de jure*, the acts of an officer
*de facto* are valid so far as the rights of the public or third
persons are concerned ; and neither the title of such officer,
nor the validity of his acts, as such, can be indirectly called in
question in a proceeding to which he is not a party. *Town of
Plymouth* v. *Painter*, 17 *Conn.* 585; *The Mayor & C.* v.
*Tucker*, 1 *Daly's Rep.* 107 ; *Hoagland* v. *Culvert, Spencer*
387 ; *The People* v. *Collins*, 7 *J. R.* 550 ; *The People* v. *Ste-
vens*, 5 *Hill* 617–630 ; *The People* v. *White*, 24 *Wend.* 525.

This principle applies with increased force where the officer
is a member of the legislative department of a municipal
corporation, having only public duties to perform. The va-
lidity of the official acts of such a body cannot be called in
question in any collateral proceeding, by showing that its

members, who are *de facto* members, are not members *de jure*, because of an irregularity or illegality in their election ; nor will the court, on a *certiorari* brought to review the official proceedings of the common council, permit the inquiry to be instituted, whether the individuals who, *de facto*, compose the common council have been legally elected.    *State* v. *Van Winkle*, 1 *Dutcher* 73 ;   *State* v. *Donahay*, 1 *Vroom* 404 ; *The People* v. *Bartlett*, 6 *Wend.* 422 ;   *The Trustees of Vernon Society* v. *Hills*, 6 *Cow.* 23 ;   *In matter of Election of Directors of M. & H. R. R. Co.*, 19 *Wend.* 125.

The rule to show cause must be discharged.    The allowance of costs in discharging the rule is in the discretion of the court.    Under the circumstances of this case, it is not proper to impose costs on the relator.

The rule is discharged, without costs.

CITED *in State, Gregory, pros.,* v. *Jersey City,* 5 *Vr.* 399 ;   *State, Hoey, pros.,* v. *Collector,* 10 *Vr.* 79 ;   *Van Riper* v. *Parsons,* 11 *Vr.* 128.