WILLIAM H. COMLEY, STATE'S ATTORNEY, EX REL. CHARLES FITZROY *vs.* BOARD OF TRUSTEES OF THE FIREMEN'S RELIEF FUND OF THE CITY OF BRIDGEPORT.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued March 2d—decided April 7th, 1937.

*John V. Donnelly,* for the appellants (defendants).

*Henry E. Shannon,* with whom was *Henry E. Shannon, Jr.,* for the appellee (plaintiff).

HINMAN, J. The complaint alleged that on December 16th, 1932, the relator, then and for a long time prior thereto a hoseman in the fire department of the city of Bridgeport, was retired by the board of fire commissioners "because, in the opinion of said board, he had become permanently disabled for the performance of his duties by reason of mental or physical disabilities resulting from injuries received or exposure endured in the performance of his duties;" that under the provisions of the charter of the city he was and is entitled to receive from the firemen's relief fund a yearly amount equal to two-thirds of the salary received or to be received by hosemen in the department, but that the respondent has paid him at the rate of only one-half of such salary, and sought mandamus requiring payment to him of an amount equal to two-thirds of the yearly compensation of hosemen, also the difference between the amount which has been paid to him since the date of his retirement (one-half) and the amount of two-thirds of such yearly compensation.

The return to the alternative writ set up that the incapacity of the relator was not due to nor did it result from injuries received or exposure endured in

the performance of his duties and that he had not in the opinion of the board of fire commissioners become so disabled for the performance of his duties, and the board did not vote to retire him for that reason but "in pursuance of a practice adopted by said board (founded on good intentions, but without legal sanction), whereby members of the force, not incapacitated in line of duty, but physically unfit to hold their jobs were 'granted' a one-half pay pension instead of being dismissed from service."

The trial court held that the board, in retiring the relator, acted neither arbitrarily nor illegally nor so unreasonably as to have abused its discretion and adjudged that a peremptory writ issue in accordance with the prayer of the complaint.

Section 87 of the charter of the city of Bridgeport as amended in 1927 provided that "The board of police commissioners and the board of fire commissioners, respectively, shall have power to retire from their respective departments any policeman or police officer or any fireman or fire department officer, who has served twenty-five years or more in the department of which he is a member and who has reached the age of sixty years, or who in the opinion of the board of commissioners, irrespective of age or term of service, has become permanently disabled for the performance of his duties by reason of mental or physical disability resulting from injury received or exposure endured in the performance of his duty . . . Any policeman or police officer or fireman or fire department officer who shall have been retired since 1920 or who shall be retired because he has become permanently disabled as aforesaid, shall be entitled to receive from the pension fund . . . a yearly amount equal to two-thirds of the yearly compensation received or to be received by

policemen, police officers, firemen or fire department officers of corresponding grade and rank; and any policeman or police officer or fireman or fire department officer retired as above set forth for reasons other than said permanent disability shall be entitled to receive from said pension fund a yearly amount equal to one-half of the yearly compensation received by such policeman or police officer or fireman or fire department officer at the time of his retirement." Section 115 of the charter, amended in 1927, provides for a firemen's relief fund which is placed under the general charge of the board of fire commissioners who are constituted a board of trustees of that fund.

The finding states that the relator was appointed a member of the fire department in 1921 and continued as such in the rank of hoseman until his retirement. At a meeting of the board of fire commissioners on December 16th, 1932, seven firemen were retired on pension, two at a pension of two-thirds of the salaries received by them at the time of their retirement and the remaining five, including the relator, at pensions of one-half of the salaries received by them. The two retired on pensions of two-thirds of their salaries were retired and so pensioned because, in the opinion of the board, they had been permanently disabled for the performance of their duties by reason of mental or physical disability resulting from injury received or exposure endured in the performance of their duty. Neither the motion by which the relator was retired and the amount of his pension fixed nor the minutes of the meeting set forth the cause of his retirement or contained any recorded expression of the board's opinion as to the cause therefor.

Between the dates of his appointment and retirement the relator, to the knowledge of the board, was

absent from duty for extended periods of time because of sickness and ill health, all of which is set forth on a card maintained to record such absences from duty and which was a part of the files of the board and available for its examination and consideration. The board was from time to time advised by letter and report of the surgeon of the fire department concerning the relator's health and physical condition. In one report, dated May 28th, 1932, it is stated that he "has a chronic valvular lesion of the heart, which is aggravated by excitement or overwork. He has a low blood pressure and is physically in poor shape." In another, dated September 16th, 1932, it is stated that "his heart condition is still bothering him." In still another, dated September 27th, 1932, the time when Fitzroy, "reported off April 6, 1932, cause cardiac disease," will report for duty is stated to be "indefinite."

On December 20th, 1932, the relator, upon receipt of notification that he had been placed on the pension roll at half pay, wrote the board that it was his understanding "that members disabled in service are entitled to two-thirds active pay when placed on the pension roll. If this understanding is correct, I would very much appreciate having the necessary changes made on the record." This letter was taken under consideration by the board at a meeting on December 28th, 1932, and it determined that the relator should be examined by a committee of three doctors. Such examination was had and at the meeting of the board January 9th, 1933, the physicians reported that "after going thoroughly into his history since his appointment in 1921, we arrive at the following conclusions, that he is now suffering from a chronic valvular heart disease which was caused by two attacks of articular rheumatism, one in 1924 and the other in 1926; and

that our examination shows nothing in his physical condition which can in any way be attributed to injury or exposure." The board thereupon denied the request of the relator for an increase of his pension from one-half to two-thirds salary and pension payments of one-half of the yearly salary were made to him between the dates of December 16th, 1932, and February 19th, 1936, on which latter date this action was brought. On the same date the board adopted a resolution that "It appearing to this Board that its action on December 16, 1932, in voting to retire Hoseman Charles Fitzroy was unauthorized and illegal, and that in so voting this board acted arbitrarily and in abuse of the discretion reposed in it by the charter," the vote to retire him be revoked, rescinded and set aside.

The trial court reached conclusions that the relator was retired "because in the opinion of said board he had become permanently disabled for the performance of his duties by reason of mental or physical disability resulting from injury received or exposure endured in the performance of his duties," that in so retiring him the board did not act arbitrarily, illegally or so unreasonably as to have abused the discretion reposed in it under the charter, that being so retired he was entitled to a pension of two-thirds of his salary, from the date of his retirement, and that he should recover the difference between one-half and two-thirds salary to the date of the complaint and two-thirds thereafter, and adjudged that a peremptory writ issue in accordance with the prayer of the complaint. The decisive assignments of error relate to the soundness of these conclusions.

It appears from the memorandum of decision that the court in so concluding relied upon the rule that

public officers are presumed to have done their duty until the contrary appears, so that a presumption arises "from acts done of what must have preceded them as matters of right or matters of duty." *West School District* v. *Merrills,* 12 Conn. 437, 440; *Comley, State's Attorney, ex rel. Brown* v. *Lawlor,* 119 Conn. 155, 161, 174 Atl. 415, and cases there cited. This presumption, as applied to such cases as the present one, is sufficient to sustain a determination of the board to retire any particular person "in the absence of proof that they acted arbitrarily, illegally or so unreasonably as to have abused the discretion reposed in them," idem, p. 161. Here, as in that case, there being but two grounds upon which the relator could lawfully be retired upon pension, and one of them available only after attaining sixty years of age and twenty-five years of service in the department (under which the relator could not qualify), the board, if it did its duty could only so retire him if he was permanently disabled "from injury received or exposure endured in the performance of his duty."

A presumption that the duty to determine the presence of this essential qualification had been complied with operates when it appears with reasonable certainty that, in so doing, the board acted within the scope of the authority conferred by the charter, and in the absence of sufficient proof that it has exceeded that authority. *West School District* v. *Merrills,* 12 Conn. 437, 440; 2 Chamberlayne, Evidence, pp. 1524, 1525. It operates, in advance of or in the absence of evidence "by taking something for granted" leaving open to further inquiry the matter thus assumed, and casts upon the party against whom it operates the duty of going forward in presenting evidence on the particular point to which it relates. *Vincent* v.

*Mutual Reserve Fund Life Asso.,* 77 Conn. 281, 288, 58 Atl. 963; *Water Commissioners* v. *Robbins,* 82 Conn. 623, 640, 74 Atl. 938; *O'Dea* v. *Amodeo,* 118 Conn. 58, 60, 170 Atl. 486; 22 C. J. p. 135. This presumption, whether it is to be regarded as resting upon common experience and inherent probability or on policy or convenience, exhausts itself when the respondent produces substantial countervailing evidence sufficient to raise the issue. *O'Dea* v. *Amodeo,* supra, p. 61. On this record we deem it immaterial whether or not the presumption is to be deemed to be one of the class based on experience and reason so that, notwithstanding the exhaustion of its effect, the facts and circumstances which gave rise to it may still afford the basis of an inference by the trier (idem, p. 61), since, in our view, any inferences deducible therefrom cannot reasonably be held to prevail over the facts found.

The finding discloses no facts from which the members of the board reasonably could have derived an opinion that disability of the relator, at the time his retirement was voted, was a result of injury or exposure in the line of duty; the reports made to them by the department doctor afforded no such indication. Two of the firemen retired at the same time as the relator, and who are found by the court to have been retired for disability incurred in the performance of duty, were awarded pensions of two-thirds salary, in accordance with the charter provision applicable to such cases, while the relator was granted only one-half salary, a distinction which is most significant of a different cause for his retirement. The action of the board, in response to the relator's request, upon notification of his retirement, for increase of pension from one-half to two-thirds salary, in causing him to be

examined by three physicians, as to the incurrence of his disabilities may also be taken as indicating lack of any pre-existing opinion that it was such as to entitle him to retirement because of disability arising from performance of his duties. Moreover, the proposition having been squarely presented by his request, the action of the board, after receiving the physicians' report, in denying the increase signifies a finding, inescapable on the existing state of facts, that, whatever might have been their opinion thitherto, his disability was not such as to qualify him for retirement on pension of two-thirds salary.

Further, even if the conclusion as to the opinion entertained by the board could stand it would not be decisive of the relator's rights. Although it would serve to acquit the board of arbitrary action or abuse of such discretion as they deemed to be reposed in them by the charter, it could not avail to justify illegality. The charter authorized two-thirds salary only on one specified ground. If that ground did not in fact exist, retirement on that basis manifestly would be unauthorized and illegal, even if the board in voting it acted in good faith but under mistake either as to the essential fact affording ground therefor, or as to the scope of their discretion. Whatever the opinion of the board when they voted the retirement, when it was developed, by the definite report which they sought and obtained from the three physicians, that the sole ground for retirement on two-thirds salary was nonexistent in the relator's case it was not only the right but also the duty of the board to refuse to grant and pay that amount. Also, even if the vote was motivated by an opinion that because of the state of relator's health, although not a result

of his service, the best interest of the department would be served by retiring him on a one-half salary basis and, through erroneous construction of the relevant charter provisions, that they were empowered to do so, that would be immaterial to the issue as to whether or not the relator was entitled to a pension in the amount of two-thirds instead of one-half salary.

As the relator had not served in the department the prescribed period of twenty-five years he was ineligible for retirement on the only other available ground, the vote to retire him on one-half salary was unauthorized under the charter and illegal, and the action of the board on February 19th, 1936, in, finally, voting to revoke, rescind and set it aside was legally justified. Such issues as may pertain to the legal status and rights of the relator during the time the vote retiring him was in ostensible effect, or be consequent thereon or upon the steps which have now been taken toward his dismissal from position in the fire department are not within the scope of the present case.

The claim, apparently first advanced on this appeal, that the respondent is estopped by the vote retiring him and the payment of pension thereunder is sufficiently answered by what has already been said. There can be no ratification or estoppel as to an agreement which is void for illegality (*Stratford* v. *Fidelity & Casualty Co.*, 106 Conn. 34, 40, 137 Atl. 13) or beyond the scope of the powers conferred upon a public corporation (*Loomis* v. *Fifth School District,* 109 Conn. 700, 703, 145 Atl. 571) or a board or commission thereof. 21 C. J. pp. 1193, 1195.

The consequence of our foregoing conclusions is that upon the situation presented by this record the relator is not entitled to additional payments on ac-

count of past pension or to future pension payments in any amount.

There is error and the case is remanded with direction to enter judgment for the respondents.

In this opinion the other judges concurred.