No. 38,548

THE STATE OF KANSAS, ex rel., ROBERT H. MILLER, County Attorney of Miami County, Kansas, *Appellee and Cross-appellant*, v. LANE RURAL HIGH SCHOOL DISTRICT No. 9 JOINT OF MIAMI AND FRANKLIN COUNTIES, a pretended municipal corporation, et al., *Appellants* and *Cross-appellees*.

(243 P. 2d 232)

Opinion filed April 26, 1952.

*Douglas Gleason,* of Ottawa, argued the cause, and *John B. Pierson* and *Thomas E. Gleason,* both of Ottawa, and *William S. Bowers,* county attorney

of Franklin county, were with him on the briefs for the appellants and cross-appellees.

*Robert H. Miller,* county attorney of Miami county, and *L. Perry Bishop,* of Paola, argued the cause, and *Bernard L. Sheridan,* of Paola, was with them on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

PRICE, J.: This was an action in quo warranto brought by the state on the relation of the county attorney of Miami county to test the validity of proceedings leading up to the organization of a joint rural high-school district and to oust the defendant local officials from exercising any and all rights and duties in connection with such district. Judgment was entered in favor of plaintiff and defendants have appealed.

The background of the matter as found by the trial court in its findings of fact is as follows:

In July of 1949 a petition was presented to the county superintendents of public instruction of Franklin and Miami counties requesting their approval of the establishment of a rural high-school district comprising territory in both counties, the school to be established at Lane, in Franklin county. The county superintendent of Franklin county approved the petition, but the county superintendent of Miami county did not. An appeal was taken to the state superintendent of public instruction, and that official, after a hearing, issued an order modifying the boundaries of the proposed district by omitting therefrom two and three-quarters sections of land within which resided some thirty electors, and approved the same as modified. He also found that the total valuation within the proposed district was $1,775,000, and that the organization of the district was permitted by G. S. 1949, 72-3501c, by reason of the existence of a high school within its boundaries for a period of not less than five years next preceding and an average attendance for the last year of the five of forty pupils or more.

The original petition to the county superintendent included a perimeter but omitted in the detailed description two sections of land to be included therein. This perimeter and description were carried to the state superintendent of public instruction. He modified the perimeter and in his order correctly described in detail the land within the modified perimeter. Thereafter petitions were circulated within the district, directed to the board of county commissioners of Franklin county, praying for the calling of an election

to vote upon the proposition of establishing such rural high-school district. *All of these petitions carried the correct perimeter of the land to be included in the district.* Some of them omitted, in the detailed description, several sections of land, while others omitted several sections of land in the detailed description and included several sections entirely outside the perimeter. Each petition stated on its face:

". . . which said boundaries are located on the attached map, . . ."

An enumeration of the qualified electors within the correct perimeter was filed. This enumeration showed 321 electors residing without the city of Lane, and 168 within the city.

The board of county commissioners of Franklin county passed a resolution finding that the requisite jurisdictional facts existed and called an election for the purpose of submitting the proposed organization to the electors, such election to be held on February 28, 1950.

The election notice published in Franklin county correctly described the real estate to be included in the district both as to perimeter and the detailed description. The notices posted upon the schoolhouse doors throughout the proposed district and those posted about the polling places also carried the correct perimeter and included correct detailed descriptions of the real estate included therein.

The election notice published in Miami county carried the correct perimeter but in the attempted detailed description omitted eighteen and one-half sections of land within the perimeter and included about five sections of land outside the perimeter. At the election a ballot was used which carried the wording:

"Shall the voters of the proposed Lane Rural High School District No. 9 establish and locate a Rural High School in said boundaries as designated in the petition, said Rural High School to be located in the city of Lane, Franklin County, Kansas?"

The proposition carried, 297 voting in favor of the organization of the district and 128 against.

Considerable oral testimony was introduced in the court below, and from it the court found that no elector residing within the perimeter of the district was refused the right to vote, and that no one residing without the perimeter was permitted to vote.

Pursuant to the election the district was organized, and no question is raised as to the validity of those organizational steps taken after the election.

None of the lower court's findings of fact is challenged by any of the parties to this appeal.

As conclusions of law the court held that the initial proceedings taken for the formation of the district were adequate; that the state superintendent of public instruction had jurisdiction to make the order that he did, and that such order was valid. The court further held that the petitions were sufficient; that the "school year" preceding was the correct period to be considered in the determination of attendance as contemplated by G. S. 1949, 72-3501c; and that as the petitions were sufficient it followed the form of ballot was sufficient.

For its final conclusion, however, the court held that the notice of election published in Miami county was inadequate and insufficient upon which to hold an election due to the fact, as heretofore, related, that such notice, notwithstanding it contained the correct perimeter description of the proposed district, contained erroneous detailed descriptions in that it omitted eighteen and one-half sections of land within the perimeter and included about five sections outside the perimeter.

Pursuant to such conclusion judgment was entered in favor of plaintiff.

Defendants moved to set aside the conclusion of law last referred to and for a new trial. Both motions being overruled they have appealed.

Plaintiff moved to vacate and set aside all other conclusions of law. This motion being denied it has cross-appealed.

We will first consider the principal appeal.

From the record before us, and from the briefs and oral argument, it is apparent that the basis of the trial court's decision was that notwithstanding the notice of the special election published in Miami county correctly described the perimeter and boundaries of the proposed district, the legal sufficiency of such notice was vitiated in its entirety by the fact it also undertook to describe in detail all of the real estate within such perimeter and in doing so omitted certain land within the perimeter and included other land outside the perimeter, under the rule laid down in *Schur v. School District*, 112 Kan. 421, 210 Pac. 1105, where, pursuant to language of a statute requiring publication notice of elections identical to the instant case, it was held that a discrepancy of four hundred acres between the territory proposed to be organized and bonded and that recited in the published notice of the election was of such

gravity as to vitiate the election and the proposed issue of bonds sanctioned thereat.

In passing, it should be noted that the opinion in that case does not disclose whether the published notice included a correct perimeter or description of the boundaries, or whether the erroneous detailed description was the only one attempted.

The statutes under which the instant proceedings were taken do not set out what the published notice should contain by way of description of the property to be included in the proposed district. G. S. 1949, 72-3502, merely provides that:

". . . Notice of all such elections shall be given at least twenty-one days prior to the date of such election by posting printed or typewritten notices on the door of each schoolhouse in the proposed district and by publishing the same twice in some newspaper published in each county in which the proposed district or any part of the proposed district lies, . . ."

That section, in referring to the petitions for a special election, provides that they shall recite "the boundaries of said proposed district."

G. S. 1949, 72-3501, refers to the "boundaries" of a proposed district, and further authorizes the state superintendent of public instruction on appeal to alter or approve the proposed "boundaries."

Defendants argue that as the mentioned statutes are silent on the question whether the publication notice shall include a detailed description of the land included in the proposed district but do refer to the "boundaries" of the proposed district, the publication notice here under attack, which correctly set out the perimeter or "boundaries," is legally sufficient and that the erroneous detailed description is mere surplusage.

On the other hand plaintiff, in its oral argument, admitted that if the published notice had "stopped" with the correct perimeter description it probably would have been good—but, having gone ahead with the detailed description and being erroneous in that respect, it is argued that the entire notice was so defective as to be invalid.

From our review of this record we do not consider it necessary to decide whether, from a purely academic standpoint, the disputed notice was valid or invalid. With respect to the attempted detailed description, it was inexcusably garbled and inaccurate, to say the least. But, does it necessarily follow that this irregularity, under the facts before us, vitiated the election and therefore the organization of the district?

There was evidence tending to show that some electors were "confused" on the question of their right to vote on account of the erroneous detailed description in the publication notice. As is so often the case, the election and proceedings leading up to it had generated considerable interest among the residents of the proposed district. The whole matter had been widely publicized. No ineligible persons were permitted to vote. All eligible electors who presented themselves at the polls were permitted to vote and did vote. Of the 321 electors residing without the city of Lane 295 voted—the vote being 173 in favor of the proposition and 122 against. Of the 168 electors residing within the city 130 voted—the vote being 124 in favor of the proposition and 6 against. Resort to simple arithmetic establishes that had all of those persons who were eligible to vote, but who did not avail themselves of the opportunity, voted, and all had voted against, the proposition still would have carried, both within and without the city, as required by G. S. 1949, 72-3504.

This action, although filed in the court below, is one in quo warranto, and is one of those actions of which this court has original jurisdiction. It has been held many times that the issuance of the writ lies within the sound discretion of the court. (*State, ex rel., v. Allen County Comm'rs*, 143 Kan. 898, 57 P. 2d 450; *State, ex rel., v. Grenola Rural High School Dist.*, 157 Kan. 614, 142 P. 2d 695; and *State, ex rel., v. Miami County Comm'rs*. 168 Kan. 723, 215 P. 2d 631.)

A review of this entire record convinces us that it has not been made to appear, either affirmatively or by reasonable inference, that the result of the election would have been any different had the publication notice under attack not contained the erroneous detailed description of the land to be included in the proposed district. Under those circumstances, and in the exercise of our discretion, we do not feel justified in issuing a writ of ouster against the defendant local officials from performing their official duties in connection with the district so organized. In our opinion the lower court erred in rendering judgment for plaintiff.

For all practical intents and purposes this really disposes of this lawsuit, but we will discuss briefly plaintiff's cross-appeal from the lower court's denial of its motion to set aside all conclusions of law other than the one in its favor heretofore discussed.

The conclusions complained of were that the initial proceedings

for the organization of the district were adequate; that the state superintendent of public instruction had jurisdiction to make the order that he did; that the order so made by him was valid; that the petitions and ballot were sufficient, and that the last "school year" preceding the organization of the district was the last "year" intended by the legislature in the enactment of G. S. 1949, 72-3501c.

Plaintiff does not challenge the correctness of any findings of fact. Our review of the challenged conclusions of law is therefore limited to the question whether they are supported by the findings of fact. No good purpose would be served by a detailed discussion of these matters. The initial proceedings for the organization of the district were adequate to bring the matter to the attention of the respective county superintendents of public instruction. The statute (G. S. 1949, 72-3501) specifies the powers of the state superintendent of public instruction on appeal made to him. The order made by that official was within his jurisdiction and was valid. The petitions, all of which carried the correct perimeter of the proposed district, were sufficient under G. S. 1949, 72-3502, which provides that they shall recite "the boundaries of said proposed district." It therefore follows that the ballot, the wording of which has already been set out, *supra,* was also sufficient.

During the last "school year"—that is, from the commencement of school in September and ending the following May—preceding the organization of this district, the average attendance was 40.2 pupils. During the last "calendar year" preceding the organization of the district the average attendance of the school was less than forty pupils, and, as the valuation of the proposed district was less than $2,000,000, plaintiff contends the proposed organization would not fall within the exception contained in G. S. 1949, 72-3501c. We cannot agree with that contention. It seems only logical to conclude that by the use of the phrase "which for the last year of the five had an average attendance of not less than forty pupils" in the statute the legislature intended the word "year" to mean "school year." The lower court's holding to that effect was clearly correct.

From what has been said it therefore follows that as to the cross-appeal the ruling of the lower court is affirmed, and as to the principal appeal the judgment of the lower court is reversed with directions to enter judgment in favor of defendants.