STATE EX REL. HENRY R. GASKI *v.* ANTHONY D. BASILE

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued October 6—decision released December 6, 1977

*Richard H. Alden* and *Stephen O. Allaire,* with whom, on the brief, was *Frederick W. Beach,* for the appellant (plaintiff).

*Karl Fleischmann,* for the appellee (defendant). *Kenneth J. Laska* filed a brief as amicus curiae.

LONGO, J. This quo warranto action was brought at the relation of Henry R. Gaski, hereinafter referred to as the plaintiff, claiming that the defendant, Anthony D. Basile, had been illegally appointed to the office of fire chief of the city of Bristol. The parties stipulated to the following facts: On January 24, 1972, the city of Bristol issued an announcement of a promotional examination for the office of fire chief. By a letter dated April 22, 1972, the state personnel department advised the Bristol board of fire commissioners, hereinafter the board, that it had administered the examination and that the three top candidates and their ratings were: Anthony D. Basile, 83.5; Henry R. Gaski, 81; and Rene R. Lauzier, 80.4. The board met on May 15 and by a five to two vote nominated the plaintiff for fire chief. On May 23 the Bristol city council, hereinafter the council, voted to reject the board's nomination and to request the board to submit another recommendation by May 26. The board took no action on the council's request at a meeting on May 25, or at a subsequent meeting on June 2. Five members of the board wrote a letter to the mayor of Bristol on June 2, requesting the council to reconsider the board's appointment of the plaintiff and stating that they would not submit another appointment unless ordered by the court because in their belief they were fulfilling their obligation under law. At a council meeting on June 12, the

mayor nominated the defendant for fire chief and the council approved his nomination. The defendant has acted as the fire chief since that date. The board subsequently voted to "ratify and confirm" the defendant's appointment on May 29, 1973.

Following the defendant's appointment the plaintiff sought injunctive relief and a declaratory judgment, which was denied in a decision holding that the real issue in the case lent itself to an action in quo warranto. The present proceedings in quo warranto were commenced shortly thereafter. The court held that the defendant had not been appointed in conformity with the Bristol city charter, but determined that the defendant should not be ousted and excluded from his office on the grounds that the board had ratified the council's appointment and that the public interest in the stability of administration in the Bristol fire department would be served by refusal to oust the defendant. Of the issues raised by the parties in the plaintiff's appeal, those necessary to our decision are (1) whether the defendant was legally appointed fire chief by the council, (2) whether the board's ratification cured any defect in the council's appointment, and (3) whether the court properly concluded that the defendant should not be ousted and excluded from his office.

In a quo warranto proceeding, the burden is upon the defendant to show a complete title to the office in dispute. *State ex rel. Wallen* v. *Hatch,* 82 Conn. 122, 125, 72 A. 575. We first consider the defendant's claim that he was legally appointed by the council. There are two provisions in the Bristol city charter specifically governing appointments in the fire department. Section 40 (g) provides that

"[t]he city council shall have power of appointment and removal of the chief and deputy chiefs of the [fire] department upon recommendations from the board of fire commissioners." Section 42 (d) states that "[w]hen a position in a promotional classification in the fire department becomes vacant . . . and when a valid and appropriate eligibility list shall be in force and effect, the board of fire commissioners shall within thirty days fill such vacancy . . . by appointing from the three highest ranking candidates on such eligibility list willing to accept the appointment." The defendant concedes that the board neither appointed him under § 42 (d) nor recommended him to the council under § 40 (g). He maintains nevertheless that his appointment was legal because the board's refusal to submit another recommendation to the council permitted the mayor and the council to act pursuant to another charter provision, § 15 (a), which states that "[a]ll other officers required by law or by any ordinance adopted by said city, except as otherwise provided herein, shall be nominated by the mayor and appointed by the city council." The defendant's claim is that § 15 (a) may be used not only for appointments not mentioned elsewhere in the charter, but also for appointments where the charter allocates appointive power but the exercise of that power is frustrated by inaction or deadlock. We disagree. The charter specifically provides for the appointment of the fire chief, in §§ 40 (g) and 42 (d). Where a charter specifies a mode of appointment, strict compliance is required. *State ex rel. Giusti* v. *Barbino,* 170 Conn. 113, 365 A.2d 408.

The defendant next contends that even if his appointment by the council was illegal, as we conclude it was, the board's subsequent resolution to

"ratify and confirm" his appointment cured any defect. His position is that regardless of whether the appointive power lies ultimately with the council under § 40 (g) or with the board under § 42 (d), the concurrence of the two bodies in the choice of a fire chief legitimized his appointment. The ultra vires act of a municipal corporation cannot be cured by ratification. *State ex rel. Fitzroy* v. *Trustees of Firemen's Relief Fund,* 122 Conn. 650, 660, 191 A. 729. The defendant's appointment, however, was not ultra vires as to the city of Bristol, but only as to the council. An illegal appointment can be cured by ratification of the municipal body with power to make the appointment. *Seif* v. *City of Long Beach,* 286 N.Y. 382, 386, 36 N.E.2d 630; 62 C.J.S., Municipal Corporations, § 706. This is a branch of the doctrine that an illegal contract can be ratified by the municipal body with power to make the contract. *Loomis* v. *Fifth School District,* 109 Conn. 700, 703–704, 145 A. 571; 10 McQuillin, Municipal Corporations (3d Ed. Rev.) § 29.104. The weakness in the defendant's position, however, is that the board voted to ratify his appointment more than one year after the transmittal of the eligibility list for the position of fire chief, contrary to § 42 (c) of the charter, which provides: "From such [eligibility] list the board of fire commissioners shall make the promotion within the department by selecting one of the three highest-ranking available candidates on such list. The remaining two names shall constitute the eligibility list for promotion within the department for a period of one year in the case of promotion to chief . . . , such period of time to commence as of the date the list is transmitted by the state personnel director to the board of fire commissioners."

The plain meaning of § 42 (c) is that the eligibility list for the fire chief position expires one year from the date of transmittal. In *State ex rel. Chernesky* v. *Civil Service Commission,* 141 Conn. 465, 106 A.2d 713, we denied the application of municipal employees for an order restoring them to an eligibility list on the ground that the plaintiffs had brought their action after the eligibility list had expired. We noted that time limitations on eligibility lists promote the public interest in qualified public servants "by requiring those remaining upon a list to resubmit themselves after a lapse of time to demonstrate anew their fitness for original or promotional appointment." Id., 470. In this case the board could not validly have appointed the defendant or recommended him to the council on May 29, 1973, because the eligibility list was no longer "in force and effect" as required by § 42 (d) of the charter. To permit the board to appoint the defendant retroactively through ratification would flout the policy behind limitations on the life of eligibility lists. It would amount to judicial creation of a new eligibility list, which we refused in *Chernesky* and refuse here. Id., 470–71.

Since we have concluded that the defendant is not the de jure fire chief, we must now consider whether in these circumstances the court properly decided that the defendant should not be ousted from his office. This action was instituted under General Statutes § 52-491, which then provided that "the superior court may proceed" in quo warranto matters "according to the course of the common law." The question before us is whether a judgment of ouster may be refused when, in a timely action to try title to public office brought by a party claiming

a right to the office, a court has found the defendant's title to be defective. In such cases we have consistently held that the defendant must be ousted. *State ex rel. Maisano* v. *Mitchell*, 155 Conn. 256, 231 A.2d 539; *State ex rel. Wallen* v. *Hatch*, 82 Conn. 122, 72 A. 575; *State ex rel. Southey* v. *Lashar*, 71 Conn. 540, 42 A. 636. The defendant urges us to relax this rule by allowing trial courts to take the public welfare into account in determining whether to grant or deny the remedy of ouster. It is difficult to conceive of public welfare considerations outweighing a relator's interest in determining his right to a public office and the state's interest in determining the rightful incumbent of the office. *State ex rel. Rylands* v. *Pinkerman*, 63 Conn. 176, 181–82, 28 A. 110. To refuse a judgment of ouster in these circumstances is to deny a claimant to public office an opportunity to redress both a private and a public injury. We are unpersuaded by the defendant's argument that our policy runs contrary to a growing number of decisions from other jurisdictions that recognize the discretionary authority of a trial court to deny the remedy of ouster when the public interest requires. In none of the cases relied upon by the defendant was the relator a private party claiming title to a public office. See, e.g., *City of Winter Haven* v. *State ex rel. Landis*, 125 Fla. 392, 170 So. 100; *People ex rel. Adamowski* v. *Wilson*, 20 Ill. 2d 568, 170 N.E.2d 605; *State ex rel. Miller* v. *Lane Rural High School Dist. No. 9*, 173 Kan. 1, 243 P.2d 232; *State ex rel. McKittrick* v. *Seibert*, 228 Mo. App. 1133, 65 S.W.2d 129; *State ex rel. Mitchell* v. *Tolan*, 33 N.J.L. 195; *Commonwealth ex rel. Koontz* v. *Dunkle*, 355 Pa. 493, 50 A.2d 496; *Commonwealth ex rel. Margiotti* v. *Union Traction Co. of Phila-*

*delphia,* 327 Pa. 497, 194 A. 661; *Clark* v. *Wild,* 85 Vt. 212, 81 A. 536. Estoppel against the state or a private relator also distinguishes several of these cases from the case at bar. *City of Winter Haven* v. *State ex rel. Landis,* supra; *State ex rel. McKittrick* v. *Seibert,* supra; *Commonwealth ex rel. Margiotti* v. *Union Traction Co. of Philadelphia,* supra. Nothing in the record substantiates the court's conclusion that refusal to oust the defendant would serve the public interest, other than that the board and the council eventually concurred in their choice of a fire chief. In the determination of public interest the passage of time should not be a consideration where such is caused by resort to judicial process to adjudicate the rights involved.

There is error, the judgment is set aside and the case is remanded with direction to render judgment in favor of the plaintiff, decreeing that the defendant be ousted and altogether excluded from the office of fire chief of the city of Bristol.

In this opinion HOUSE, C. J., LOISELLE and BOGDANSKI, Js., concurred.

SPEZIALE, J. (concurring). A crucial issue, which is not treated in the majority opinion, is who has authority to appoint the fire chief under the Bristol city charter. Section 15 (a) states in pertinent part: "All other officers . . . , *except as otherwise provided herein,* shall be nominated by the mayor and appointed by the city council." (Emphasis added.) Since two other provisions of the charter, §§ 40 and 42, relate to appointment of the fire chief, § 15, by its own terms, is inapplicable. Sections 40 and 42 both apply specifically to the fire department. Section 40 (g), which was made part of the charter

in 1939, provides that "[t]he city council shall have power of appointment . . . of the chief . . . of the department upon recommendations from the board of fire commissioners." Section 42, which became effective in 1957 and was modified in 1959, sets forth promotional procedures within the fire department. These procedures apply to the office of fire chief as well as to lower echelon appointments. (Sections 42 [a] and 42 [c] specifically refer to promotion to chief.) Under § 42, the board of fire commissioners (the board) has the power to make appointments[1] from the appropriate civil service eligibility list. It appears then that according to the Bristol charter *both* the board, under § 42 (c), and the city council, under § 40 (g), have the power to appoint the fire chief. The provisions are clearly in conflict,[2] and, under such circumstances, the general rule is that a subsequent act will be found to have repealed the first by implication. See *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 205, 355 A.2d 21; *East Haven* v. *New Haven,* 159 Conn. 453, 469, 271 A.2d 110. The elaborateness of the promotion/appointment procedure set forth in § 42 gives further support to the plaintiff's argument that § 42

[1] The words "promotion" and "appointment" are both used in various subsections of § 42. Since the section does not distinguish the power to promote from the power to appoint, it is inferable that the terms have been used interchangeably. At the very least one can conclude that the commission is empowered to do both.

[2] The only conceivable way to reconcile these provisions is to read them to require the board of fire commissioners, whose discretion under § 42 (c) has already been restricted to a choice of one out of three candidates on an eligibility list, to be subject to the further discretion of the city council. If the city council can then, without giving reasons, reject the recommendation of the board, as it did here, and force the board to "recommend" a candidate whom the council prefers, then, in practical fact, the role of the board in the selection process is effectively eliminated. This reading is not only unreasonable, but it is sure to lead to further litigation.

was intended to supersede or repeal § 40 (g). See *East Haven* v. *New Haven,* supra; *McAdams* v. *Barbieri,* 143 Conn. 405, 414, 123 A.2d 182. Although the charter containing both sections was submitted to and approved by the city voters in 1968, this does not indicate that § 42 was not intended to supersede § 40 (g). "The rule is that where there has been included in a general compilation or code two conflicting sections or provisions carried forward from prior enacted statutes, that section or provision should prevail which can be considered the last expression of the lawmaking power." Annot., 12 A.L.R.2d 416, § 3, p. 430. Thus, under general principles of statutory construction, § 42 controls and the board had the sole authority to appoint the new chief.

Unfortunately, the board did not take upon itself the power to appoint, but instead submitted a recommendation to the city council, as prescribed by § 40 (g). It is unclear whether this was done as a courtesy to the council or in a sincere belief that the commission lacked the power to appoint on its own. Whatever the reason, the board left it to the council to make the final appointment. The council refused to accept the recommendation, the commission refused to submit a new one, and the council finally appointed someone nominated by the mayor. Since § 15, which provides for appointment of city officers by the city council upon the nomination of the mayor, does not apply to appointment of the fire chief, the appointment of the defendant by the council was invalid under the charter.