[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on August 24, 1974, in Trumbull, Connecticut. The wife's maiden name was Jill Kaufman. The plaintiff and defendant have continuously resided in the State of Connecticut for more than one year next preceding the date of the filing of this complaint. The parties have three minor children issue of this marriage, to wit: Eric Pepe born May 29, 1977, Evan Pepe born January 3, 1980, and Christopher Pepe born December 6, 1982. No other minor children have been born to the wife since the date of the marriage. The State of Connecticut is not now or has not in the past contributed to the support of the parties or their family.
The husband and wife are both 41 years of age and in good health. The wife is a former school teacher and has a Master's Degree in counseling but has not worked since the oldest child was born in 1977. The wife has been the primary caretaker of the children and the care giver.
The husband graduated from the University of Bridgeport with a BS in business with a major in marketing and a minor in economics in 1972. He started work at an early age in is father's shop. He was a tool room attendant; he learned how to make tools; he became a materials handler; he was press setup man; he supervised the press room; he designed tools and dies; he brought into the business computer aided machines, and became involved in operations and sales which included sales, purchasing and designing. During the time that he was married, the company became more valuable, and his participation and value to the company became more substantial. The company he worked for was the Arcade Tool and Die Company. CT Page 1305
In 1982 the defendant had earned income of $128,400.00. In 1985 he had earned income of $234,921.00. In 1987 he had earned income of $197,005.00. In 1988 he had earned income of $385,718.00. In 1989 he had earned income of $603,844.00. In 1990 his income was $354,724.00, all as the result of unearned income. The business was sold August 15, 1989, and substantial funds were placed in a trust fund which was established on December 28, 1988, as shown on plaintiff's exhibit 2. The schedule of assets in that trust, as of January 14, 1992, is shown on plaintiff's exhibit 14 and is $1,866,546.00.
The husband has indicated that he has no earned income and does not desire to work at this time. He described himself as having no present intention to seek a job. There are two and a half years left on the noncompete clause in the tool and die business agreement. He is thinking that that area is looking bigger, as he described it, "on the horizon" and may go back into that business which he knows.
Despite the gigantic earnings of the husband, the parties had no savings at the time the business was sold. It is clear that because of the husband's lavish spending habits the trust was established in order to protect the husband from himself.
The children of the marriage are substantially protected by trust funds set up for the benefit of the children by Frank W. Pepe, Sr. Exhibit D shows there are in excess of a million dollars in total for the three boys, each of them approximating an equal share of that million dollars.
The wife testified that the marriage broke down irretrievably because of the husband's alcohol and drug consumption, his gambling, his lack of interest in the family, and his physical and emotional abuse. The court, after having heard the evidence, finds that the husband's conduct was the cause of the breakdown of the marriage.
Throughout the marriage, the husband drank excessively. Towards the end of the marriage, he did not come home from work to eat dinner. There were signs throughout the marriage that he was drinking, agitated, aggressive and not in a good mood. He had been intoxicated in front of the children's coaches, referees and other parents. There was an incident where he carried a baseball bat on his shoulder throughout one baseball season to intimidate the other coaches. (The husband is a man of large, physical stature.)
The husband would have a few joints of marijuana CT Page 1306 cigarettes before he left for work. The husband started "coke" (cocaine) approximately ten or eleven years ago. He even did it during the day. Large sums of money from the household went into the cocaine. "Coke" controlled his life as was testified to by his wife. It became more important than his job and his family. Exhibit ten shows checks that were used for cocaine purchases consisting of 43 checks ranging in sums from approximately $500.00 to $2,100.00. The husband admitted that at times during the marriage he was doing a thousand dollars a week in cocaine and $700.00 a week at Jai Alai bets at the same time. He admitted to $52,000.00 worth of cocaine abuse on an annual basis at times and $35,000.00 a year in Jai Alai bets. Jai Alai slips were introduced into evidence as exhibits 11 and 11a. Exhibit 11 shows $300.00 worth of bets and exhibit 11a shows $500.00 worth of bets in one day. The husband did not want to do family things and did not attend Little League banquets or Cub Scouts activities.
The husband took a loan on his insurance policy for drugs. He rented a summer house to receive money for drugs. The family tried to get him to stop drug use. He attended lots of programs including Cocaine Anonymous and Alcoholics Anonymous. In 1986 a drug intervention was arranged but it did not work. The husband always said drugs were a part of his life, and he would cut down but not stop.
The wife indicated she made efforts to save the marriage because she loved him but the marriage could not survive.
In addition, there were incidents of physical violence. In 1989 or 1990, when they were out together and she felt he could not drive, she tried to take the car keys. He pushed her against the wall at that time and tried to choke her and she ran outside to get away. Another incident began where there was verbal abuse and finally physical violence where he pushed her against the wall and choked her. It got to the point where he was not going to work until 11:00 a.m. He was hanging out in places like Tuesday's Den and did drugs in the upstairs bedroom.
The defendant had no relationship with his children. In September of 1990 he left the house. The last time he saw the children was December of 1990. He has not requested to see the children since. Five months after the husband left the wife, the children called their father to get him involved in visitation but he did not follow up. The children have a good relationship with the father's parents, their grandparents. They received no Christmas gifts in 1991 from their father. CT Page 1307
The wife is worried about the husband being alone with the children after this long absence. There was a strong, negative reaction from the children when it was discussed about giving the father their sports .schedule. The wife feels trust needs to be built up which is not there. It is clear that he needs to be drug and alcohol free.
The husband has presently been paying $4,400.00 per month temporary alimony payments. Those amounts have been received directly from the trust fund. The wife believes that, as a result of the husband's drug abuse during the course of the marriage and gambling abuse, that somewhere between $500,000.00 and a million dollars was lost (spent) on those two items.
This case came to this court as a limited contested matter. The court finds it has jurisdiction. The court has listened to the parties and listened to their witnesses and reviewed all the exhibits in the case. In addition, the court has taken into consideration all the criteria set forth in Connecticut General Statutes 46b-81, assignment of property and transfer of title, 46b-82, the alimony statute, 46b-62, the attorney's fees statute, 46b-84, the child support statute and the child support guidelines, and all other relevant statutes and, in addition, the court has reviewed the financial affidavits of the parties and listened to the arguments of counsel.
In addition, counsel have prepared complicated and complex claims for relief and memoranda of law thereon which the court has also reviewed.
The attorneys, through their requests for relief and their memoranda of law, have addressed an issue concerning distribution of the husband's trust fund. Exhibit 14 shows the current value of the trust fund as of January 14, 1992 at $1,866,546.00. The trust was established December 28, 1988, as shown on exhibit 2, and the trust agreement was between Frank W. Pepe, Jr. Settlor, (husband) and William J. Brett, Trustee (an attorney at law). The trustee testified at trial that the estimates gross income from the trust this year would be approximately $125,000.00 less $10,000.00 in expenses. The wife's attorney has asked for half of the trust fund for the wife. He has cited in his brief authority for that proposition. The husband's attorney, however, has cited authority for the proposition that this is something that cannot be done.
The key question for the court is, "Is this property (the trust fund) subject to assignment by the court pursuant to46b-81?" The court has concluded, after reviewing the briefs and bringing the lawyers back for additional argument on the CT Page 1308 law, that this question is answered yes.
The husband's attorney cites Krause v. Krause,174 Conn. 36 (1978). It is clear that Krause talked about an expectancy not being capable of division. However, in all of the cases cited by the husband, it is clear that it was someone else's money. In Krause the claim was that the wife "might inherit from her mother [not her money]." In Rubin v. Rubin, 204 Conn. at page 224, the court's order was that the husband was to pay one third of the net which he might receive from his mother by trust or inheritance. (Note it was the mother's money and not his money.) The court said that that was not property subject to division. In Eslami v. Eslami, 218 Conn. 801, the court found a vested interest but did not find that the court had abused its discretion when the court did not consider the inheritance since the value was unknown based on some litigation that was pending. It is clear, however, though that although the supreme court says the trial judge did not consider it, in fact, he did consider it when he made provision in his orders for modification of the alimony award when the value became ascertainable. Again, however, this was someone else's money, the father's money.
If the husband were able to prevail on this claim, it would open the door to every husband in every divorce case who is having marital problems to transfer his property to a trust in the fashion that was done in this case. He could then come into court and say, "Krause, Rubin, I cannot give you any of it, wife, although I would like to." This result would seem incomprehensible to this court. Accordingly, the court has made the orders that hereinafter follow.
Based on the comprehensive plan of this decision, including property distribution, the court makes the following orders concerning periodic payments:
The court orders as follows:
1. A dissolution of marriage is granted on the grounds of irretrievable breakdown under the husband's cross-complaint.
2. The wife shall have sole custody of the minor children. The husband's rights of visitation shall be exercised on the premises located at 880 Robert Treat Extension, Orange, Connecticut, at such times as are agreed to by the husband and wife taking into account the wishes of the children. The husband's visitation shall be contingent upon his exercising them alone and being free from any alcohol and/or drug substances. Visitation away from the premises CT Page 1309 shall be supervised by a person chosen by the wife but agreeable to the husband.
 The ultimate goal of this order is to get the boys and their father back together again after some period of transition. If the parties cannot decide when visitation should take place off the premises or when supervised visitation should end, this matter is to be referred to the Family Relations division of this court for mediation and thereafter for further investigation or study as is deemed necessary and/or as is raised by motion by either of the parties.
3. The husband shall pay as child support, as long as the husband is alive, for the three children the sum of $800.00 per month per child until each child shall reach the age of 18 years. (That means presently the husband shall pay $2,400.00 per month child support.) The child support for each child shall terminate when the child reaches the age of 18 and/or is sooner emancipated. Said payments to be paid on the first of each month.
4. The husband shall pay to the wife, as long as he is alive, the sum of $500.00 per month on the first of the month until the first of the following events occur: (a) death of the husband, (b) death of the wife, (c) remarriage of the wife, or, (d) the cohabitation of the wife pursuant to Connecticut General Statutes 46b-86 (b) or its successor, or (e) 15 years from the date of dissolution, whichever shall first occur. The court in making this order has taken into consideration the property division and the fact that the wife will be receiving a lump sum alimony payment of approximately $467,000.00.
 The payments under articles 3 and 4 of this decision are to be made weekly, and the husband shall instruct the trustee of his irrevocable trust to make said payments as he has been making in the past directly to the wife for her support and the support of the minor children.
5. The husband shall transfer by quitclaim deed, mortgage Free, as it presently is represented to be, all his right, title and interest in and to the marital residence located at 880 Robert Treat Extension, Orange, Connecticut, which the court finds has the value of $380,000.00 based on exhibit A. The failure of the husband to do this within thirty (30) days from this court order shall cause this to be transferred by operation of law pursuant to 46b-81. The wife shall assume all carrying charges including but not limited to real estate taxes, homeowner's insurance and CT Page 1310 repairs. Any liens caused now or in the future by the husband's action or inaction on said real property shall be removed immediately by the husband at his expense.
6. The wife presently has a one sixth interest in land in Wolcott, Connecticut. Although on her financial affidavit she shows it as market value unknown, the testimony indicates the value of the one sixth interest is worth $100,000.00. The wife shall retain her interest in said property free and clear of any claim of the husband.
7. The husband shall be the sole owner of all of the other property, whether in his name individually or jointly with the wife, as set forth on his financial affidavit. This covers the premises shown on the Schedule of Real Estate attached to his affidavit which includes (a) 75 Shoreline Drive, Stratford, Connecticut, which the court finds to be valued at $75,000.00 based on exhibit B; (b) 189 West Walk, West Haven, Connecticut, (c) 72 acres in Wolcott, Connecticut, (d) Venice, Florida, property, a 5/12 interest, (e) property in Palatka, Florida, a 1/5 interest, (f) a lot in Cypress Gardens, St. Augustine, Florida; (g) property at Route 207, St. Augustine, Florida.
8. The husband shall transfer to the wife one half of his individual retirement account as shown on his affidavit in the sum of $178,000.00. One half of that, in the sum of $89,000.00, is to be transferred to the wife by having it "rolled over" into her IRA account.
9. The court has reviewed the affidavit regarding counsel fees and professional fees and the authority set forth therein and the amounts set forth therein. The court finds the fair and reasonable fee for the services performed to be $20,169.83. A retainer has previously been paid and the balance due is $14,169.83. The husband is ordered to pay that $14,169.83 as his contribution towards the wife's attorney's fees. That amount is to be paid by the husband within thirty (30) days of the date of this decree out of any source he chooses except that the court would advise him that he has liquidity in his cash value on his life insurance policy.
10. Except as set forth herein, each of the parties shall be entitled to all other assets in their respective names as set forth on their financial affidavits.
11. Each of the parties shall be entitled to all household furniture and furnishings presently in their possession. The wife shall be deemed the owner of the Yamaha Wave CT Page 1311 Runner and trailer, and it is hereby ordered transferred to her.
12. The husband shall be responsible for all debts listed on his financial affidavit and, in addition, shall pay the wife a sum equal to the total of her following debts: real estate taxes $5,457.00; automobile taxes $432.00; Master Card $1,800.00; VISA $5,000.00; Jordan Marsh $250.00; Macy's $400.00; G. Fox $400.00 and Caldors $470.00. The total amount that he is to pay her is the sum of $14,209.00. The same guidelines as set forth concerning the insurance cash surrender value is brought to the attention of the husband.
13. This court does not have the authority to order that the parties file any joint tax returns. It would appear, however, for the parties, in their best interests, to review those circumstances and to determine whether or not they should file such returns.
14. Since the husband was the sole earner and since his tax situation is extremely complicated, the husband shall be responsible for indemnifying and holding harmless the wife against any taxes assessed for any years in which the parties filed a joint tax return. If a tax lien is placed on the residence located at 880 Robert Treat Extension, Orange, Connecticut, or the Wolcott property as the result of any tax returns filed by the husband, either jointly or individually, the husband shall immediately cause that to be removed by paying the amount due or bonding out the lien as is necessary.
15. Since the parties agree on an amount that basically paid the expenses of the house during the pendency of the litigation, if the husband does not choose to file a joint federal and state tax returns, he shall be responsible to pay to the wife a sum equal to her amount due when said tax returns are filed by the wife.
16. The husband shall maintain the existing health insurance for the children until they attain the age of 18 years and shall be responsible for any cost for said health insurance.
17. The husband and wife shall split equally any uninsured medical and dental expenses including orthodonture for the minor children until the child attains the age of 18 years.
18. The husband shall maintain $500,000.00 of life insurance for the benefit of the wife for so long as he is paying her CT Page 1312 alimony. The children shall be contingent equal beneficiaries of his obligation to maintain life insurance for the wife. The wife shall be the trustee on behalf of the children for so long as he has a child support obligation for the children. If the husband is not paying the wife alimony when each child reaches the age of 18, he may reduce the $500,000.00 by $166,000.00.
 The husband shall, at least annually, send the wife proof that the insurance is in effect and has been paid. Failure to have the above ordered insurance at the time of his death shall allow the wife and/or the children to have a claim against his estate. The husband shall notify the insurance company to notify the wife in the event he fails to pay a premium or if he attempts to change the beneficiary or if he attempts to borrow any money against said insurance. The court recognizes that the husband presently has $800,000.00 worth of insurance so that he may borrow funds against that insurance as long as, at no time, is the balance below $500,000.00.
19. The husband shall transfer to the wife an amount equal to one half of the value of his irrevocable trust. Based on the statement filed in the court with a value of $1,866,546.00 as shown on January 14, 1992 on exhibit 14, he is ordered to transfer to the wife the sum of $933,273.00. An amount equal to $466,636.00 shall immediately be transferred from the trust, if the husband so requests, and the trustee makes said distribution, or from other assets of the husband by sale or liquidation of said assets, if the husband does not request distribution from the trust or the trustee refuses to make said distribution. The remaining one quarter, approximately $466,636.00 plus whatever interest the trust earns on that money, shall be paid when the trust terminates. In the event the husband receives any distribution of principal or payments of principal are made for his benefit prior to the termination of the trust, the wife shall be entitled to one half of said distribution made by the trustee to or for the benefit of the husband until she has received the remaining one quarter as provided herein.
 The husband shall instruct the trustee to make any payments and distributions directly to the wife instead of receiving them himself and him making the required payments and distributions to the wife.
 The husband shall not in his last will and testament make any provision which would violate the terms of this judgment. In the event he does or for whatever reason the CT Page 1313 plaintiff does not receive what she is entitled to under the judgment then she shall have a claim against the husband's estate.
EDWARD R. KARAZIN, JR., JUDGE